# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ESTATE OF CASIMERO CASILLAS, et al.,**<br><br>Plaintiffs<br><br>v.<br><br>**CITY OF FRESNO, et al.,**<br><br>Defendants | CASE NO. 1:16-CV-1042 AWI-SAB<br><br>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. No. 21) |

In the fall of 2015, Casimero Casillas was shot and killed by Officer Trevor Shipman of the Fresno Police Department as Casillas attempted to evade arrest. Plaintiffs, Casillas's wife and five minor children, allege claims of excessive force under the Fourth Amendment and the Bane Act, Wrongful Death Negligence, and Battery against Officer Shipman and the City of Fresno.

At the close of non-expert discovery, Defendants moved for summary judgment, contending: (I) Officer Shipman's use of force was objectively reasonable, and he is entitled to qualified immunity on the excessive force claim; (II) Plaintiffs' have failed to meet the "purpose to harm" standard required for a substantive due process claim; and (III) Plaintiffs' pendent state law claims fail in the absence of a constitutional violation.

For the reasons that follow, the Court will:

(I) Deny Defendants' motion for summary judgment on the Fourth Amendment excessive force claim, and deny qualified immunity for Officer Shipman;
(II) Grant Defendants' motion for summary judgment on the Fourteenth Amendment deprivation of familial relationship claim; and
(III) Deny Defendants' motion for summary judgment on Plaintiffs' pendent state law claims of battery, wrongful death negligence, and interference with federal or state rights under the Bane Act.

## *Background*[1]

On September 7, 2015, officers with the Fresno Police Department attempted a traffic stop of a vehicle driven by Casimero Casillas ("Casillas") for failure to wear a seatbelt. Doc. No. 21-1 at ¶¶1, 9 (Statement of Facts); 23-4 at 100-135 (Ex. C, Interview with Officer Castillo). Casillas failed to yield, continuing to drive while obeying "all traffic laws." See id.

After a short vehicle pursuit, Casillas arrived at his friends' home (the "Saginaw Residence"), parked his car and ran inside. Doc. No. 21-1 at ¶ 10. Officers set up a perimeter and dispatched K-9 units to search for him. Id. at ¶¶ 16-17. Officer Shipman was posted in an area between the main residence and garage (the "Breezeway"). Id. at ¶ 3. At some point, Casillas attempted to hide in the detached Apartment behind the main residence. Id. at ¶ 17; see also Doc. 23-3 (Ex. B, the "Scene Diagram") (below).



---
[1] The facts are presented in a light most favorable to the nonmoving party, Plaintiffs, and all justifiable inferences from the facts are drawn in Plaintiffs' favor. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010).

<mark>2</mark>

Officers radioed that Casillas had been spotted somewhere in the back yard. Doc. No. 21-1 at ¶ 17. Multiple officers, including K-9 units, moved to that area in search of Casillas, and warned him that the K-9 units would bite. Id. at ¶¶ 18-19. Casillas exited the Apartment carrying a pipe, which he held pointed at the ground. Doc. No. 22-5 at 205-206 (Ex. E, Interview of Officer Long); 22-6 at 202-213 (Ex. F, Interview of Officer Wright). Casillas saw Officer Long, walked slowly north, saw Officer Wright, and walked slowly into the Breezeway where Officer Shipman was stationed. See id. Casillas continued moving slowly toward the opposite door of the Breezeway, and did not raise the pipe in an assaultive manner as he moved through. See id.; see also Doc. No. 23-2 at ¶ 11 (Ex. A, Decl. of William Harmening). Officer Shipman fired three shots at Casillas, felling and ultimately killing him. Doc. No. 21-1 at ¶ 8. Officer Shipman gave no verbal warning to Casillas, and declined to use his Taser or other less-deadly force to prevent Casillas's escape. Doc. No. 23-2 at ¶¶ 11-12; Doc 22-10 at 335-337; see also Doc. Nos. 22-5 and 22-6.

Plaintiffs brought suit on behalf of themselves and Casillas's estate, claiming excessive force and loss of familial relations under 42 U.S.C. § 1983, excessive force under Cal. Civ. Code §52.1, battery, and wrongful death negligence. See Doc. No. 5 (the "1AC"). At the close of non-expert discovery, Defendants moved for summary judgment on these claims. See Doc. No. 21.

*Legal Standard for Summary Judgment*

Summary judgment is proper when no genuine issue as to any material fact exists, entitling the moving party to judgment as a matter of law. Rule 56.[2] A dispute is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the suit under the governing law. United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009).

The party seeking summary judgment bears the initial burden of informing the court of the legal basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Soremekun v. Thrifty

---

[2] Citations to the "Rules" is to the Federal Rules of Civil Procedure, unless otherwise noted.

Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party will bear the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Id. Where the moving party will not bear the burden of proof on an issue at trial, the movant may prevail by "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970)).

If the moving party meets its initial burden, the opposing party must then establish that a genuine issue as to any material fact exists. Id. at 1103. The opposing party cannot rest upon the mere allegations or denials of its pleading, but must instead produce evidence that sets forth specific facts showing a genuine issue still exists. Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Anderson, 477 U.S. at 248). The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in the opposing party's favor. Anderson, 477 U.S. at 255; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive inference, it must still be rational or reasonable. Id. The parties have the obligation to identify material facts; the court is not required to scour the record in search of a genuine disputed material fact. Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010). A party's "conclusory statement that there is a genuine issue of material fact, without evidentiary support, is insufficient to withstand summary judgment." Bryant v. Adventist Health Sys./W., 289 F.3d 1162, 1167 (9th Cir. 2002). Further, a "motion for summary judgment may not be defeated . . . by evidence that is merely colorable or is not significantly probative." Anderson, 477 U.S. at 249-50; Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

Fundamentally, summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015).

## I. Excessive Force under the Fourth Amendment

*Parties' Arguments*

Defendants argue Officer Shipman's use of force was objectively reasonable under the circumstances. They contend Casillas was actively evading arrest when driving—by running intersections and almost causing traffic collisions, and on foot at the Saginaw Residence—by actively ignoring multiple commands to surrender. They also contend that when Casillas entered the Breezeway and charged at Officer Shipman, metal pipe in hand, he posed an immediate threat to Officer Shipman's safety. Thus, Defendants argue Officer Shipman acted reasonably in shooting and ultimately killing Casillas. Defendants therefore maintain Officer Shipman either did not violate Casillas's Fourth Amendment right, or is entitled to qualified immunity.

Plaintiffs contend genuine issues of material facts still exist concerning Casillas's encounter with Fresno Police Officers. Plaintiffs point to numerous portions of the record that demonstrate Officer Shipman's account of the shooting is questionable. Plaintiffs also point to their expert's review of the events, which they contend demonstrates a reasonable alternative to Defendants' version of the events. Through this evidence, Plaintiffs aim to demonstrate that Casillas did not pose an immediate threat to Officer Shipman, and so any use of deadly force was unreasonable. Thus, Plaintiffs maintain a reasonable jury could still find Officer Shipman violated Casillas's Fourth Amendment right. Plaintiffs also point to numerous cases where the Ninth Circuit has deemed the use of deadly force in absence of an immediate threat to be excessive, and so Officer Shipman is not entitled to qualified immunity.

*Analysis*

To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). The parties do not dispute that Officer Shipman acted under color of state law, but disagree as to whether the Officer used excessive force (or is otherwise entitled to qualified immunity).

/ / /

### A. Constitutional Violation

Under the Fourth Amendment, law-enforcement officers may use an amount of force that is objectively reasonable for the situation, given the totality of the circumstances. Tennessee v. Garner, 471 U.S. 1, 7–8 (1985). Determining the objective reasonableness of a particular use of force involves balancing the degree of force used against the government interest at stake. Graham v. Connor, 490 U.S. 386, 396 (1989). The goal is to determine if the force used was "greater than is reasonable under the circumstance." Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002) (citing Graham, 490 U.S. at 396). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. This determination is normally a question for the jury, because it requires "resolution of disputed questions of fact[,] determinations of credibility, [and] the drawing of inferences." Santos, 287 F.3d at 852 ("[E]xcessive force claims typically boil down to an evaluation of the various accounts of the same events. Thus, the circumstances surrounding those events may be critical to a jury's determination of where the truth lie."). Summary judgment should be granted sparingly in excessive force cases. Glenn v. Washington County, 673 F.3d 864, 871 (9th Cir. 2011).

Here, Officer Shipman shot Casillas three times, ultimately killing him. Deadly force is force of the highest degree, and so the Court weighs this prong accordingly. See Blanford v. Sacramento Cnty., 406 F.3d 1110, 1115, n.9 (9th Cir. 2005).

To determine the government's interest, courts examine a non-exhaustive list of factors, including: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, (3) whether the suspect actively resisted arrest or attempted to escape, and (4) the availability of alternative methods of capturing or subduing a suspect. Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir. 2005). "The most important factor under Graham is whether the suspect posed an immediate threat to the safety of the officers or others." Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010). In analyzing the events, a court is to be "cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." Ryburn v. Huff, 565 U.S. 469, 477 (2012).

Fresno police officers attempted to initiate a traffic stop of Casillas' vehicle for failure to wear a seatbelt, as minor a crime as there is. Doc. No. 21-1 at ¶ 9. However, Defendants maintain that by fleeing from the traffic stop, Casillas made a series of choices that unnecessarily escalated the situation into one that ended with him posing an immediate threat to Officer Shipman. See Doc. No. 21. Defendants argue Casillas—who had methamphetamine and alcohol in his bloodstream—endangered the public by driving recklessly on his way to the Saginaw Residence. Id. at ¶ 1; Doc. No. 21-4 at 39-40 (Ex. 2, Depo. of Officer Shipman, where he states he observed Casillas "entering the intersection against the solid red traffic light, violently swerv[ing] from side-to-side nearly causing a collision[.]"). Once Casillas began his flight on foot at the Sagniaw Residence, the officers were forced to dispatch K-9 units to search the house and backyard shed and apartment; these officers warned Casillas of the K-9 units and called for his surrender. Doc. No. 21-1 at ¶ 2. When Casillas emerged from the east door of the Apartment, both Officers Long and Wright state they saw Casillas carrying a pipe; they warned him to drop it, but he ignored them. Id. at ¶ 4. Casillas then "quick[ly] . . . darted" into the Breezeway, where Officer Shipman was positioned. Id. at ¶ 3; Doc. No. 22-5 at 224-225. Officer Shipman stated that Casillas quickly moved toward him, raising the pipe to his chest in a "pre-assaultive" motion. Doc. No. 21-1 at ¶¶ 5-6. Officer Shipman said he shouted at Casillas to "stop, stop, get on the ground!" but Casillas did not obey. Id. at ¶ 7. Officer Shipman believed Casillas was going to hit him in the head with the pipe, possibly killing him, and believed he had no ability to deploy his taser, given that Casillas had quickly closed the distance between them to a mere five feet. Doc. No. 22-10 at 335-338 and 347-348. Officer Shipman fired three times in quick succession, striking Casillas once in the right leg, once in the right abdomen as he fell, and once in his right-back side. Id. at 348-349; Doc. No. 21-11 at 32:10-16.

If these were the sum of all the facts, it would be the height of second guessing for the Court to determine Officer Shipman acted unreasonably, given the immediate threat Casillas posed, his active evasion of the officers, and the unavailability of the taser to halt Casillas's attack on Officer Shipman. Ryburn, 565 U.S. 469 at 477. If these were the facts, summary judgment would surely issue in Defendants' favor. Soremekun, 509 F.3d at 984.

However, as Defendants are aware, the Court must view the facts in a light most favorable to the non-moving party—here, Plaintiffs—which includes drawing "all justifiable inferences . . . from the facts placed before the court[.]" Anderson, 477 U.S. at 255; Narayan, 616 F.3d at 899. As the Ninth Circuit explained in Cruz v. City of Anaheim:

> [I]n the deadly force context, we cannot "simply accept what may be a self-serving account by the police officer. Because the person most likely to rebut the officers' version of events—the one killed—can't testify, the judge must carefully examine all the evidence in the record . . . to determine whether the officer's story is internally consistent and consistent with other known facts.

765 F.3d 1076, 1079-80 (9th Cir. 2014) (citing Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)); see also Gonzalez v. City of Anaheim, 747 F.3d 789, 795 (9th Cir. 2014) (en banc) ("[A]s it is our obligation to view the evidence in the light most favorable to the nonmoving parties at summary judgment, we cannot simply dismiss the internal contradictions in [the defendant's] testimony.").

In their response brief, Plaintiffs point to numerous factual issues with Defendants characterization of the events. Nissan Fire, 210 F.3d at 1103. Plaintiffs contend that despite Officer Long's statement that Casillas "quick[ly] . . . darted" into the Breezeway, multiple Officers stated Casillas was moving slowly during this time. See Doc. No. 22-5 at 224-225 (Officer Long: "And then he made a quick, uh, I mean he was movin' real slow, lackadaisical, [] when he was walking away from me . . . ."); Doc. No. 22-6 at 214-223 (Officer Wright: "[A]t that point he just kinda looked over his shoulder at me and just kept walking into - and that's when he walked into the - into the [Breezeway]. And as he walked in he kinda did a - like, a half-ass close the door. . . He didn't close it all the way but, you know, he just kinda brushed it with his left hand and then walked inside."). Plaintiffs also vigorously dispute that, as Casillas was moving from the Apartment to the Breezeway, Officers Wright and Shipman gave Casillas verbal warnings to drop the pipe. Doc. No. 21-1 at ¶ 4. Plaintiffs point to Officer Shipman's statement that he did not hear Officers Long or Wright order Casillas to drop the pipe, to contradictions between Officer Long's deposition and his initial interview that Officer Wright gave this verbal warning, and to the statements of two witnesses close by the Breezeway at the time who also reported not hearing any

warnings. See Doc. No. 22-7, 28:5-8 (Ex. G "Shipman Depo"); 22-5 at 13:541-48 (Ex. E, "Long Interview"); see also Doc. No. 22-8 (Ex. H, Ms. Meza-Castillo's interview, where she described hearing other officers' commands but no commands to drop a pipe); 22-9 at 187-218 (Ex. I, Mr. Verduzco's interview, where he described hearing K-9 announcements but no other commands from officers). As to the critical moments inside the Breezeway, Plaintiffs dispute much of Officer Shipman's testimony. Officer Shipman said he ordered Casillas to halt his approach, yelling at the top of his lungs, but none of the four individuals closest to the Breezeway (Officers Long and Wright, Mr. Verduzco, and Ms. Meza-Castillo) reported hearing this command. See id.; see also Doc. No. 21-4 at 10:3-5. Officer Shipman said Casillas held the pipe at chest level as he entered the Breezeway, but Officers Long and Wright had the pipe down at Casillas' side. Compare Doc. No. 22-10 at 331-332; with Doc. No. 22-14 at 55:14-18; 22-15 at 33:23-25 through 34:1-12. Officer Shipman said Casillas closed the gap in one to two seconds, but Officer Long said Casillas' movement from the Apartment through the Breezeway was slow, lasting between 10-20 seconds. Compare Doc. No. 22-7 at 21:14-17; with 22-14 at 55:8-10.

The Court cannot ignore the possibility that Officer Shipman's testimony may be self-serving, requiring a fact-finder to adjudge his credibility. Cruz, 765 F.3d at 1079-80. Should a jury find Officer Shipman's credibility lacking, it could affect not only his account of the shooting itself, but even minimally-probative portions of Defendants' evidence, such as Officer Shipman's account of the vehicle chase. Compare Doc. No. 21-4 at 39-40 (where Officer Shipman states that Casillas had run a red light and had nearly caused a collision) with Doc. No. 23-4 (Officer Castillo's statement that Casillas was "following all traffic laws" during his vehicular flight); see also Ninth Cir. Crim. Jury Instr. 3.9 (2017) ("[I]f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said."). These contradictions, identified by Plaintiffs in their opposition brief, raise genuine issues of material fact as to the kind of threat Casillas posed to Officer Shipman. See Freecycle, 626 F.3d at 514 ("A dispute is 'genuine' if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.").

///

In addition to disputing some of the Officers' direct testimony with circumstantial evidence, the Plaintiffs offer the expert testimony of Mr. Harmening, whose evidence is presented in place of the only other witness who could have provided a first-hand account of the shooting. See George v. Morris, 736 F.3d 829, 834 (9th Cir. 2013) ("In cases where the best and usually only witness who could offer direct testimony for the plaintiff about what happened before a shooting has died, our precedent permits the decedent's version of events to be constructed circumstantially from competent expert and physical evidence, as well as from inconsistencies in the testimony of law enforcement."). Harmening offers interpretive evidence of the Officers' accounts of the event, concluding that the circumstantial evidence and inconsistencies in Officer Shipman's testimony support a finding that Officer Shipman had no reason to use deadly force. Under these "light-most-favorable" facts, Harmening states Officer Shipman had alternative means of subduing Casillas, given his slow movement and non-assaultive stance. Doc. No. 23-2; see Bryan, 630 F.3d at 826 ("[P]olice are required to consider what other tactics if any were available to effect the arrest."). Again, what the Court believes about this evidence is irrelevant; what matters for summary judgment is whether a reasonable fact-finder may determine that Plaintiffs have offered a rational or reasonable account of the threat Casillas posed to officers on the scene, the availability of other means of subdual, and Officer Shipman's choice to use deadly force. Narayan, 616 F.3d at 899 ("While a justifiable inference need not be the most likely or the most persuasive inference, it must still be rational or reasonable.").

Thus, read in a light most favorable to the Plaintiffs, Casillas did not pose an immediate threat to Officer Shipman. Casillas failed to yield to a traffic stop, and obeyed "all traffic laws" as he drove on. Doc. No. 23-4 (Ex. C, where Officer Castillo said Casillas was "following all traffic laws."). He ended his vehicular flight at the Saginaw Residence, where he continued to evade on foot. See Doc. No. 21-1 at ¶ 1. Casillas hid in a detached Apartment behind the main residence while Fresno Officers set up a perimeter and dispatched K-9 units to search for him. Doc. No. 21-1 at ¶¶ 16-17. Casillas exited the Apartment carrying a pipe, which he held pointed at the ground. Doc. No. 22-5 at 205-206; 22-6 at 202-213. Casillas saw Officer Long, walked slowly north, saw Officer Wright, and walked slowly into the Breezeway where Officer Shipman was stationed. See

id. Casillas continued moving slowly toward the opposite door of the Breezeway, and did not raise the pipe in an assaultive manner as he moved through. See id.; see also Doc. No. 23-2 at ¶ 11. Officer Shipman gave no verbal warning to Casillas, and declined to use his Taser or other less-deadly force to prevent Casillas's escape. Doc. No. 23-2 at ¶¶ 11-12; Doc 22-10 at 335-337; see also Doc. Nos. 22-5 and 22-6. Instead, Officer Shipman fired three shots at Casillas, felling and ultimately killing him. Doc. No. 21-1 at ¶ 8; see also Doc. 23-3 (the Scene Diagram) below.



If a reasonable fact-finder determines the preceding paragraph are the facts as they happened, then Officer Shipman's use of force would be deemed "greater than is reasonable" under Graham, indicating his use of force was excessive and, hence, violative of Casillas' Constitutional rights. 490 U.S. at 396; Santos, 287 F.3d at 846. Conversely, if a jury finds the Officers' accounts credible, indicating Casillas "quick[ly] . . . darted" into the Breezeway, charged Officer Shipman, and raised the pipe in preparation to strike the Officer—all in a matter of

seconds—then Officer Shipman's use of deadly force would be appropriate. See Cruz, 765 F.3d at 1079 ("To decide this case a jury would have to answer just one simple question: Did the police see Cruz reach for his waistband? If they did, they were entitled to shoot; if they didn't, they weren't."). Thus, since "divergent ultimate inferences may reasonably be drawn from the undisputed facts," leaving genuine issues of material fact on the issue of whether Officer Shipman used excessive force, summary judgment is inappropriate. Fresno Motors, 771 F.3d at 1125.

### B. Qualified Immunity

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "'[C]learly established law' should not be defined 'at a high level of generality.'" White v. Pauly, 137 S. Ct. 548, 662 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). Rather, "clearly established law must be particularized to the facts of the case." Id. Thus, for a right to be clearly established, the law "must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." Shafer v. Cnty. of Santa Barbara, 868 F.3d 1110, 1117 (9th Cir. 2017) (citing White v. Pauly, 137 S. Ct. 548, 551 (2017). While a case need not be "directly on point" to show that a right is clearly established, it must make the question "beyond debate." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018). "It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established." Shafer, 868 F.3d at 1118. The Supreme Court has "repeatedly [] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson, 555 U.S. at 232. However, "[i]f a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003.

As discussed in Section I.A. above, the light-most-favorable-to-Plaintiff facts tell a story that indicates Officer Shipman used excessive force against Casillas. Though Casillas was actively evading capture, he moved slowly through the Breezeway, displayed no furtive

movements to indicate he intended to threaten Officer Shipman, and could have been subdued by other means. See Doc. No. 21-1 at ¶¶ 1-8, 21-30; see also Section I.A., supra. Plaintiffs cite to several cases where the Ninth Circuit has held that, in the absence of an immediate threat and with alternative means of subdual, law enforcement officers are not to employ deadly force. Most notably, in Gonzalez v. City of Anaheim, the en-banc judges of the Ninth Circuit considered whether the fatal shooting of a suspect was excessive. 747 F.3d 789 (9th Cir. 2014). During a scuffle with the suspect in the front seat of the suspect's van, two officers contended the suspect "violently accelerated" his vehicle, causing them to perceive an immediate threat to their safety. Id. at 793. The officers opened fire, striking the suspect and ultimately killing him. Id. The question presented was not whether the suspect's conduct would have posed an immediate threat, so as to allow for the use of deadly force, but whether the testimony of the two officers was credible. Id. at 795. Since the only other witness was the suspect-decedent, the Ninth Circuit instructed that the court should take the circumstantial evidence into account. Id. (citing Glenn v. Washington County, 673 F.3d 864, 871 (9th Cir. 2011) (finding officers' decision to shoot an individual holding a pocket knife "which he did not brandish at anyone" to be excessive); see also George v. Morris, 736 F.3d 829 (9th Cir. 2013) (denying the defendants' interlocutory appeal as to the district court's denial of qualified immunity, where issues of fact existed as to whether the suspect made furtive movements with a gun). Noting that some of this circumstantial evidence called the officers' testimony into question, the Court held that a jury must weigh the conflicting evidence at trial, thus precluding summary judgment. Id. at 797 ("We do not hold that a reasonable jury must find in favor of the plaintiffs on this record, only that it could."); see also Estate of Elkins v. Pelayo, 737 Fed. Appx. 830, 833 (9th Cir. 2018) ("[R]egarding Plaintiffs' Fourth Amendment claim[s], a reasonable jury could find on the evidence presented that Elkins was not reaching for his waistband . . . or that shooting a suspect simply to stop him from running away was not a legitimate law enforcement objective.") (citing Cruz, 765 F.3d at 1079).

*Conclusion to Section I*

Genuine issues of material fact preclude summary judgment on Plaintiffs' excessive-force claim, and current Ninth Circuit precedent precludes a grant of qualified immunity.

## II. Substantive Due Process Claim for Deprivation of Familial Relationship under the Fourteenth Amendment

*Parties' Arguments*

Defendants argue that Plaintiffs have not met the heightened "conscious shocking" standard required by Ninth Circuit precedent. Defendants maintain that because Officer Shipman was "simply fulfilling his assigned task of securing the door between the [Breezeway] and the unsearched house when he was suddenly accosted by a pipe-wielding Casillas advancing on him[,]" no reasonable juror could find he had a purpose to harm Casillas. Doc. No. 21 at p. 10.

Plaintiffs state, without further argument, that "triable issues of material fact [exist] regarding . . . Plaintiffs' claim for interference with familial relationship under the Fourteenth Amendment[.]" Doc. No. 23 at p. 1 ¶¶ 12-15.

*Analysis*

A substantive-due-process claim under the Fourteenth Amendment for deprivation of a familial relationship "requires the plaintiffs to prove that the officers' use of force 'shock[ed] the conscience.'" Gonzalez, 747 F.3d at 797 (quoting Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir.2008). This requires Plaintiffs to establish that Officer Shipman acted "to cause harm unrelated to the legitimate object of arrest." Porter, 546 F3d at 1139.

Even viewing the facts in a light most favorable to Plaintiffs, the Court finds this standard has not been met. Officer Shipman was one of many officers at the Saginaw Residence attempting to arrest Casillas, and there is no indication in the record that Officer Shipman had any ulterior motives when he shot Casillas. Thus, to the extent that any substantive due process claim is before the Court, summary judgment is appropriate. Gonzalez, 747 F.3d at 798.

## III. Pendent State Law Claims

*Analysis*

State law claims for battery, wrongful-death negligence, and interference with federal or state rights under the Bane Act are coextensive with claims for excessive force under the Fourth Amendment. See Garlick v. Cty. of Kern, 167 F. Supp. 3d 1117 (E.D. Cal. 2016); Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1179 (E.D. Cal. 2008), aff'd 340 Fed. Appx. 377 (9th Cir. 2009)

(citing <u>Munoz v. City of Union City</u>, 120 Cal.App.4th 1077, 1102 n. 6 (2004)). The Court has determined that genuine issues of material fact preclude summary judgment on Plaintiffs' Fourth Amendment Claim for excessive force. Therefore, Defendants' motion for summary judgment on Plaintiffs' Battery claim (cause of action III), Wrongful Death-Negligence claim (cause of action IV), and Bane Act claim (cause of action VII) must be similarly denied. <u>See</u> <u>id.</u>

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' summary judgment motion (Doc. No. 21) is GRANTED IN PART AND DENIED IN PART, as follows:
   a. Plaintiffs may proceed to trial on their excessive force claim under the Fourth and Fourteenth Amendment, as well as their California state law claims for battery, wrongful death-negligence, and interference with federal or state rights under the Bane Act; and
   b. Defendant is granted summary judgment on Plaintiffs' substantive due process claim for disruption of familial relations under the Fourteenth Amendment;
2. As per the parties' agreement, Plaintiffs' Second, Fifth and Sixth Causes of Action are dismissed (<u>see</u> Doc. No 21 at p. 1-2); and
3. The remainder of this case is referred back to the magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: October 23, 2018

SENIOR DISTRICT JUDGE

15