# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE ESTATE OF CASIMERO CASILLAS, et al.,** <br><br> **Plaintiffs** <br><br> v. <br><br> **CITY OF FRESNO, et al.,** <br><br> **Defendants** | **CASE NO. 1:16-CV-1042 AWI-SAB** <br><br> **ORDER ON PARTIES' MOTIONS IN LIMINE** <br><br> **(Doc. Nos. 48, 49)** |

Plaintiffs are proceeding to trial on four claims, each arising from the fatal shooting of Casimero Casillas by Officer Trevor Shipman in the fall of 2015. Plaintiffs have alleged a Fourth Amendment excessive force claim under 42 U.S.C. § 1983, as well as pendent state law claims of battery, wrongful death negligence, and an interference with rights under the California Bane Act.

Each party now presents one motion in limine. The Court finds:

(I) As to Plaintiffs' motion concerning information not known to Officer Shipman on the day of the shooting—Casillas's criminal and incarceration history, his drug use history, the results his toxicology exam, and statements by Casillas regarding death or suicide—exclusion is improper;

(II) As to Defendants' motion concerning the admissibility of "any testimony from Plaintiffs' designated expert William Harmening," Defendants' motion will be granted in part and denied in part.

Defendants have also requested permission to bring "physical evidence consisting of a metal pipe" through security for trial. Plaintiffs object to how the pipe is used at trial. The Court will allow for the pipe's presence at trial, but it may not be given to the jury, either during trial or during their deliberations.

/ / /

## Background[1]

On September 7, 2015, members of the Fresno Police Department attempted a traffic stop of a vehicle driven by Casillas, but Casillas failed to yield. After a short vehicular pursuit, Casillas arrived at 5590 E. Saginaw, Fresno, California, parked his car, and ran inside. Officers set up a perimeter and dispatched K-9 units to search for Casillas; Officer Shipman was posted in an area between the main residence and garage (the "Breezeway"). At some point, officers and K-9 units moved toward a detached Apartment behind the main residence in search of Casillas. Casillas exited the Apartment carrying a pipe, which he held pointed at the ground. Casillas saw Officer Long to the east, walked slowly north, then saw Officer Wright to his left, and turned right into the Breezeway where Officer Shipman was stationed. The Parties dispute what happened next: Officer Shipman contends he gave Casillas a verbal warning, but Casillas charged at him with the pipe, so he had no choice but to use his gun. Plaintiffs contend that, based on the testimony of the other officers and witnesses on the scene, Officer Shipman shot Casillas almost immediately upon him entering the Breezeway. Plaintiffs argue Casillas's actions leading up to the encounter demonstrate an intent to flee, not attack, and Officer Shipman could have used his Taser to subdue Casillas. Officer Shipman fired three shots at Casillas, felling and ultimately killing him.

Plaintiffs (Casillas's wife and children) seek economic, non-economic, and punitive damages under 42 U.S.C. § 1983, the California Bane Act, battery, and negligence. Defendants have denied all liability, contending Officer Shipman acted reasonably.

In the context of these four claims, the parties currently dispute the relevance and admissibility of two categories of facts: (I) Casillas's criminal and incarceration history, his drug use history, the results of his toxicology exam, and statements made by Casillas regarding death or suicide—information unknown to Officer Shipman at the time of the incident; and (II) "any testimony from Plaintiffs' designated expert William Harmening, who Plaintiffs argue is qualified to testify about the veracity of Officer Shipman's version of the shooting, and whose qualifications and methodologies Defendants challenge.

---

[1] These facts derive from the Joint Pretrial Statement and the Court's Order on Defendants' Summary Judgment Motion. *See* Doc. No. 34 at p. 2; Doc. No. 26.

2

## Legal Standards for Motions in Limine

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Motions in limine may be "made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Id.* at 41 n.4; *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *see also City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) ("[M]otions in limine[] are useful tools to resolve issues which would otherwise clutter up the trial.").

In *Hana Fin., Inc. v. Hana Bank*, the Ninth Circuit cited with approval the following "standards applicable to motions in limine":

> Judges have broad discretion when ruling on motions in limine. However, a motion in limine should not be used to resolve factual disputes or weigh evidence. To exclude evidence on a motion in limine, the evidence must be inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. This is because although rulings on motions in limine may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence.

735 F.3d 1158, 1162 n.4 (9th Cir. 2013) (citing *Goodman v. Las Vegas Metro. Police Dep't*, 963 F.Supp.2d 1036, 1047 (D. Nev. 2013), *rev'd in part on other grounds by* 613 F. App'x 610 (9th Cir. 2015)); *see also Tritchler v. Co. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004)); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).

By resolving a motion in limine, potentially prejudicial evidence may be prevented from being presented to the jury, therefore avoiding the need for the trial judge to attempt to neutralize the taint of prejudicial evidence. *See Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003). However, a court may change its ruling at trial "because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41–42).

*Legal Standards for Relevance*

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402. "Relevancy is not an inherent characteristic of any item of evidence[,] but exists only as a relation between an item of evidence and a matter properly provable in the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008) (quoting Advisory Committee Note for Fed. R. Evid. 401).

Additionally, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403

**I.    Casillas's background information is relevant and will not be excluded, despite Officer Shipman's lack of knowledge on the day of the shooting.**

*Parties' Arguments*

Plaintiffs and Defendants agree that Officer Shipman did not know Casillas prior to the day of the incident, and agree the Officer was unaware of Casillas's criminal and incarceration history, his history of drug use, the presence of methamphetamine in his system—as evidenced by the toxicology exam at autopsy, and his statements concerning death or suicide. Plaintiffs therefore argue these facts should be excluded as wholly irrelevant to the issue of Officer Shipman's use of force (under Fed. R. Evid. 402), as improper character evidence (under Fed. R. Evid. 404), or as unduly prejudicial to Casillas when weighed against their minimally-probative value (per Fed. R. Evid. 403).

Defendants counter that Casillas's criminal and incarceration history are relevant to the question of damages, both economic and non-economic, if only to counter Plaintiffs' expected testimony that Casillas was in "a loving and supporting relationship with them." Defendants further argue Casillas's toxicology report, criminal and incarceration history, and expressions of suicide are all admissible to show motive and intent on Casillas's part—that he charged Officer Shipman with a pipe either because he was under the influence of drugs at the time, he wanted to

4

avoid returning to prison, or he otherwise intended commit "suicide by cop." Finally, Defendants argue these facts are admissible and relevant to officer-involved shootings especially where, as here, Plaintiffs dispute the circumstance facing the officer just prior to the shooting.

*Analysis*

Based on the scope of Plaintiffs' remaining claims, the Court finds that these facts—Casillas's criminal and incarceration history, his prior drug usage, the results of his toxicology exam at autopsy, and his expressions of suicide—are not excludable.[2]

First, the Court is cognizant of the fact that phase one of this trial will not only require the jury to decide liability but also damages. *See* Joint Pretrial Statement, Doc. No. 34 at p. 15, ¶¶ 17-18 ("Plaintiffs are not agreeable to sever damages from liability."). Plaintiffs seek economic damages as well as damages for "the loss of the comfort, familial relationship, society, attention, friendship, companionship, services, [and] support of the decedent." The above set of facts are relevant to the damages elements of Plaintiffs' claims. *See N.W. v. City of Long Beach*, 2016 WL 9021966, at *5-6 (C.D. Cal. June 7, 2016) (Evidence of the presence of marijuana in decedent's system and drug-use history deemed "relevant to the determination of noneconomic damages as recognized in California; as it goes to his life expectancy, health, habits, activities, lifestyle, and occupation."; decedent's criminal history deemed relevant to future earnings; and decedent's history of incarceration deemed relevant to the amount of time "plaintiffs and decedent have spent time apart."); *Castro v. Cnty. of L.A.*, 2015 U.S. Dist. LEXIS 103945, *11 (C.D. Cal. Aug 3, 2015) (denying motion in limine to exclude decedent's drug use history because of its relevance to the issue of damages for plaintiffs' § 1983 and wrongful death claims); *P.C. v. City of L.A.*, 2011 U.S. Dist. LEXIS 165075, *7-8 (C.D. Cal. August 22, 2011) (denying plaintiff's motion in limine to exclude decedent's criminal history partly due to the issue of damages, and stating that while the nature of decedent's convictions would raise 403 concerns, inquiry into the "length of time decedent spent in prison . . . are probative of damages and of the credibility of damages witnesses who may testify to having spent considerable time with decedent.").

---

[2] Plaintiffs also sought exclusion of "any reference to or photographs of weapons [other than the metal pipe] found in the home where Casillas was shot." Defendants have stipulated to the exclusion of these other weapons, and so the Court considers the matter settled.

Additionally, since this is a case where the parties dispute the events just prior to Officer Shipman's fatal shooting of Casillas, the jury must be allowed to hear competing evidence of Casillas's motive and intent on that day. *See Boyd v. City and County of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009) ("In a case such as this, where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible."); *see also* Fed. R. Evid. 404(b) (while evidence of "other crimes, wrongs, or acts" is inadmissible to prove character or criminal propensity, these facts are admissible for other purposes, such as proof of intent, plan, or knowledge). This includes, as Defendants intend to argue to the jury, Casillas's criminal history ("decedent was highly motivated to aggressively avoid a return to prison, knowing he was again DUI."), the results of the toxicology report at autopsy ("decedent's undisputed intoxication not only assists the jury with evaluating the disputed facts surrounding the critical encounter between decedent and Officer Shipman, but it also provides the jury with a logical explanation as to why decedent would become so violently aggressive over an otherwise seemingly minor traffic infraction."), and suicidal expressions (such evidence "not only provides a logical explanation for why decedent would advance on an armed police officer with a steel pipe."). *See Boyd*, 576 F.3d at 948–49 (finding the district court did not abuse its discretion in admitting decedent's suicidal ideations, criminal record, and drug usage, as each were highly probative of the decedent's erratic conduct); *see also Turner v. County of Kern*, 2014 U.S. Dist. LEXIS 18573, *7-8 (E.D. Cal. Feb 12, 2014) ("Evidence of intoxication would be relevant to explain [decedent's] conduct[,] including any attempts to leave the scene[,] and, depending on exactly how much of [decedent's] conduct is in dispute, to corroborate the officers' version of event.").

For these reasons, the Court will deny Plaintiffs' motion in limine asking for exclusion of evidence of Casillas's criminal record, history of incarceration, history of drug use, results of the toxicology exam acquired at autopsy, and prior statements about death and suicide. Since the Court's ruling as to many of these issues is keyed specifically to the issue of damages or of Casillas's motive or intent, Plaintiffs may request a limiting instruction to avoid any potential use of this evidence to prove character under Rule 404.

## II. Plaintiffs' expert William Harmening is qualified to opine on police practices in use-of-force situations, and much of his testimony is relevant and reliable.

*Parties' Arguments*

Mr. Harmening asserts expertise in "procedures of police practices and proper police tactics." Plaintiffs intend to offer a number of his opinions concerning Officer Shipman's use of force, as Casillas ultimately died from his gunshot wounds, no one else (aside from Officer Shipman) was in the room at the time of the shooting, and slight contradictions exist between Officer Shipman's account and those officers and witnesses in the immediate vicinity.

Defendants contend Mr. Harmening is not qualified to opine on the subjects he lists, pointing to Mr. Harmening's CV and lack of experience in qualifying or testifying about use of force issues, and so he should be barred from testifying. Additionally, Defendants vigorously oppose allowing many of Mr. Harmening's opinions to reach the jury's ears, arguing he has offered no reliable basis for how he came to form his opinions, and contending these statements are mere speculation and conjecture—irrelevant and unfairly prejudicial to Defendants under Fed. R. Evid. 402 and 403. Plaintiffs counter that many of Mr. Harmening's qualifications are spelled out in his CV, which Defendants can dissect on cross-examination. Plaintiffs also assert that Defendants' expert has offered similarly-styled (but contrasting) opinions on these same topics, and so excluding Mr. Harmening's opinions would "not be a fair playing field."[3]

*Legal Standard for Admissibility of Expert Testimony*

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," provided expert's knowledge will aid the jury in understanding the evidence or to determine a fact in issue. Fed. R. Evid. 702. The expert's testimony must be "based on sufficient facts or data," and must stem from the expert's application of "reliable principles and methods" to the facts of the case. *See Id*. This rule imposes a "gatekeeping" obligation on the trial judge to ensure that expert has the appropriate qualifications, and that the expert's testimony "is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

---

[3] Plaintiffs did not file a motion in limine as to Defendants' expert, so this order cannot decide this expert's fate. However, the principles espoused in this order apply equally to either side's use-of-force expert, and can be enforced via objections by the parties at trial.

In assessing whether an expert has the appropriate qualifications, the court only need consider whether the expert offers some special knowledge, skill, experience, training, or education on the subject matter. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). Relevancy "simply requires that the evidence . . . logically advance a material aspect of the party's case." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). Reliability requires the court to assess "whether an expert's testimony has a 'reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 149); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (stating that the concern is not with the correctness of the expert's conclusions but the soundness of the methodology). Finally, as with any testimony, the gatekeeping function also requires an examination of whether the testimony's "probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time. Fed. R. Evid. 403; *Hankey*, 203 F.3d at 1168.

Under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993), and its progeny, a district court's inquiry into admissibility "is a flexible one." *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). District courts have "broad discretion" in performing this function, and "Rule 702 generally is construed liberally." *Hankey*, 203 F.3d at 1168. The overarching objective of *Daubert's* gatekeeping requirement "is to ensure the reliability and relevancy of expert testimony [and] to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. Thus, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether [the] testimony has substance such that it would be helpful to a jury." *Alaska Rent–A–Car*, 738 F.3d at 969–70. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof[—]not exclusion." *Primiano*, 598 F.3d at 564; *see also Alaska Rent–A–Car*, 738 F.3d at 969 ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."). "[R]ejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Advisory Committee Notes (2000).

*Analysis*

A. *Mr. Harmening's Qualifications*

Defendants first dispute Mr. Harmening's qualifications, contending his curriculum vitae and expert report "reveals that he is not only unqualified to offer his intended opinions, but that his opinions fall woefully short of those which might be admissible under the most liberal application of the rules." Plaintiffs counter that Mr. Harmening's qualifications are sufficiently documented, and any issues Defendants have with these are a matter for cross-examination.

Mr. Harmening's report asserts he has the following qualifications:

- He has been in law enforcement for 36 years, in both a patrol and investigative capacity;
- He is a former police academy instructor in Illinois, responsible for all behavioral science instruction to Illinois police cadets completing their initial basic training—including "the psychology of force, especially deadly force";
- He was a member of the "Central Illinois Critical Incident Debriefing Team";
- He was involved in his own officer-involved shooting;
- He has attended many training sessions, including "investigative methods and homicide investigation, crime scene analysis, and CIT instructor training";
- He has qualified annually with his duty weapon, and periodically attending law updates on the use of force;
- He has "participated in many different types of police training as an instructor or co-instructor";
- He is the program coordinator of a forensic psychology program at Washington University in St. Louis, serving as lead instructor for courses including Introduction to Forensic Psychology and Crisis Intervention—both of which "deal extensively with the subject of police use of force";
- He has authored four peer-reviewed textbooks, two of which include "an extensive treatment of the subject of force";
- He has given multiple depositions and provided written expert opinions in approximately 50 use of force cases since 2015.

See Doc. No. 56-3, pp. 1-2. Given these asserted qualifications, and the Court's limited role as a gatekeeper, Plaintiffs have met their burden to show Mr. Harmening has "special knowledge, skill, experience, training, or education" on "police practices and proper police tactics" in use-of-force situations. *Hankey*, 203 F.3d at 1168; *see also Dasho v. City of Fed. Way,* 101 F. Supp. 3d 1025, 1030 (W.D. Wash. 2015) (finding plaintiffs' witness qualified as an expert in forensic science based on his many years of on-the-job training and experience with crime labs and as a private forensic-sciences consultant). Defendants arguments as to Mr. Harmening's experience—that that

9

he has never qualified or testified as a "use of force or police practices expert witness in any court," that his law enforcement experience derived from a "very small, rural sheriff's department in Illinois" in the 80's and 90's, and that the remainder of his experience has been limited to the investigation of securities fraud, and not training or standards for California law enforcement officers—goes to the weight of his testimony. *See Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017) (finding the district court abused its discretion in excluding the testimony of a "police practices expert" in full, where this expert may have provided "helpful testimony regarding whether there was a failure to train."); *see also United States v. Williams*, 865 F.3d 1328 (11th Cir. 2017) ("Any quarrels with [the expert's] qualifications were fodder for cross-examination."). This includes Mr. Harmening's qualifications concerning Tasers and other such specialized knowledge, skill, experience, training, or education in the area of police practices as to use of force.[4]

  *B. The Relevance and Reliability of Mr. Harmening's Opinions*

Notwithstanding this general opening-of-the-gates for Mr. Harmening—due to his asserted qualifications in police use-of-force practices—the Court has some concerns as to the low probative value of certain aspects of Mr. Harmening's proposed testimony (as well as that of Defendants' expert), when weighed against the potential that if he were to state certain things, he is likely to mislead the jury as to their role as fact-finder.

This case turns on the "objective reasonableness" of Officer Shipman's use of force, as judged from the perspective of a reasonable officer on the scene. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) ("The goal is to determine if the force used was greater than is reasonable under the circumstance."). As part of this assessment, the jury will be tasked with resolving whether Casillas posed an immediate threat to Officer Shipman, and whether the Officer had alternative methods to subdue Casillas. See Doc. No. 26

---

[4] The Court has reserved its ruling on Mr. Harmening's knowledge, expertise, training, and education concerning California POST standards. In his declaration, Mr. Harmening states that he has familiarized himself with "the training and standards for California law enforcement officers," and is "very familiar with POST Standards and Learning Domains." Doc. No. 56-4 at ¶ 15. However, Defendants assert that when Mr. Harmening was deposed, he stated he was not familiar with California POST standards, and did not rely upon them in forming his opinions. The Court does not have the deposition transcript before it, and so cannot definitively rule on Defendants' argument that Mr. Harmening should be deemed unqualified in California POST standards. Thus, the Court will deny Defendants' motion in limine as to this issue at this time, and has informed the parties that they may revisit this issue at trial, outside the presence of the jury, prior to Mr. Harmening testifying as to California POST Standards.

10

(citing *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005)). It is the Court's understanding that the bulk of the evidence in this case will come via the testimony of Officer Shipman—the only person in the room with the now-deceased Casillas—as well as the other officers and witnesses just outside the room. Officer Shipman contends that Casillas entered the Breezeway and rapidly closed to within 5 feet while carrying a large metal pipe, all despite the Officer's verbal warnings for Casillas to stop. See Doc. No. 26 at p. 7. Plaintiffs contend that the other accounts of the incident call Officer Shipman's account into question, and instead demonstrate Casillas was moving slowly, that Officer Shipman fired almost immediately upon Casillas entering the Breezeway, and that Officer Shipman gave no verbal warnings of any kind. Plaintiffs intend to argue to the jury that Casillas was merely attempting to escape, not attack Officer Shipman, and that he had the pipe to protect himself from the K-9 units. Conversely, Defendants intend to argue that Casillas posed an immediate threat, and so Officer Shipman's actions were objectively reasonable. Thus, the jurors in this case will be required to decide what happened by weighing the credibility of these witnesses and parsing their testimony. Given this context, the job of any use-of-force expert should merely be to aid the jury in comprehending the use of force standard for "objectively reasonable officers." In no way should these experts be deciding for the jurors what happened in those critical moments.

To this end, the Court is concerned about a number of statements made by Mr. Harmening in his expert report. These include the following:

1. In response to Officer Shipman's statement that he yelled "stop, stop, get on the ground" prior to firing his weapon, Mr. Harmening stated "it seems unlikely that Shipman yelled anything at all.";
2. In response to Officer Shipman's account of the timing of the incident, Mr. Harmening questioned the reliability of this account;
3. Based on Officer Shipman's post-incident statement, Mr. Harmening questions "whether Casillas was ever even a threat.";
4. Mr. Harmening questions why Officer Shipman failed to use his Taser.

Insomuch as Mr. Harmening would be attempting to testify about what actually transpired between Casillas and Officer Shipman, this would be improper, as Mr. Harmening was of course not present during the shooting. The perspectives of the witnesses and officers will be made known to the jurors via their direct testimony and any testimony elicited on cross—and it is for the

11

jurors to decide whether Officer Shipman gave verbal warnings, whether he fired prematurely, whether Casillas was approaching or fleeing, and whether Officer Shipman had the ability to draw his Taser. Any attempt by Mr. Harmening to establish these facts, or opine on a witness's credibility, under the moniker of "expert" would usurp the province of the jury, is of little probative value, presents a danger of misleading the jury, and must be excluded. *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989) (an expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility); *see also United States v. Brown*, 871 F.3d 532, 538–39 (7th Cir. 2017) (in an excessive-force case that was a "textbook example of easily comprehensible facts," district court did not abuse its discretion in excluding expert testimony under Fed. R. Evid. 403, where its admission "may have induced the jurors to defer to [the expert's] conclusion rather than drawing their own.").

However, the Court does believe Mr. Harmening's experience would be relevant to Plaintiffs' claims, and could aid the jury in understanding how force is to be deployed by reasonable officer in certain situations. As stated in Section II.A. above, the Court deems him sufficiently qualified to opine on police practices in use-of-force situations. Assuming Mr. Harmening intends to rely on the testimony of the witnesses as given at trial as to certain facts, or explain how police practices are to operate in hypothetical situations, and assuming the "fact-finding" expressions in his report are merely his attempt to frame his opinion, the Court finds his methodology reliable. Throughout his report, Mr. Harmening states he relied on the following information in reviewing this case:

- The reports and incident scene diagrams created by the Fresno County Sheriff's Office and the Fresno Police Department, as well as traffic videos, scene pictures, hand-drawn diagrams of the scene, and scene videos;
- All statements made by the witness and officers present at the scene of the shooting, including Officer Shipman's;
- The audio recordings of the dispatches;
- The physical evidence reports, autopsy report, and investigative file;
- Depositions of the officers and witnesses, including Officer Shipman

Thus, when Mr. Harmening testifies, he may note the testimony already presented from the percipient witnesses, respond to hypothetical questions, and opine on whether such actions were in

12

accordance with training and best practices. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("[T]he use of leading, hypothetical questions to elicit expert opinions is entirely appropriate."); *see also Willis v. City of Fresno*, 680 F. App'x 589, 591 (9th Cir. 2017) (where expert opined on threat posed by decedent and hypothesized that deadly force would have been appropriate if decedent had been reaching for a gun, it was not abuse of discretion to allow expert "to respond to hypotheticals based on evidence presented at trial [because] the jury was responsible for resolving whether [decedent] was reaching for the gun at the time [the officer] fired."); *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1199 (C.D. Cal. 2015) (finding that although expert was "qualified to opine as to whether the officers' use of force was excessive or unreasonable, . . . such testimony should be explored through hypothetical questioning so as to avoid invading the province of the jury.").

Additionally, the Court is concerned about the following in Mr. Harmening's report:

1. Mr. Harmening concludes "it was never Casillas' intent to escape the officers, only to hide from them," and "[i]t is likely that he armed himself with the pipe not to defend against the officers, but against the dog attack he knew was imminent."
2. Mr. Harmening at times attempts to instruct on the law.

On these two points, the parties are in general agreement that these are inadmissible. Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind. *See Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) (citing *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998)); *Hill v. Novartis Pharms. Corp.*, 2012 WL 5451816, at *2 (E.D. Cal. Nov. 7, 2012) ("The Court finds this and other testimony regarding defendant's intent, motives or state of mind to be impermissible and outside the scope of expert testimony."). Additionally, it is the duty of the court to instruct on the law. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1207 (9th Cir. 2016) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court.") (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)). Thus, the Court will grant Defendants' motion as to these two points.

Finally, Plaintiffs argue that any exclusion of Mr. Harmening's opinions would be unfair, given that Defendants have proffered their own police practices expert whose report, they argue, similarly attempts to decide the facts. Though Plaintiffs have not submitted a motion in limine as to this expert, Defendants' expert is expected to play by the same rules. Defendants' use-of-force expert appears to have based his opinions on the same information relied upon by Mr. Harmening, (a combination of the above reports, statements, and physical evidence, and his expertise in police use-of-force). Thus, while Defendants' expert may rely upon testimony already given, and may respond to hypothetical questions, he may not testify that Officer Shipman in fact gave a warning to Casillas, took the time to assess the situation before firing, was threatened by Casillas, or had no ability deploy his Taser, nor may he testify as to Casillas's state of mind or instruct on the law. Any proffering of this kind of testimony from either side should draw objections—ones the Court is likely to sustain.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion in Limine #1, concerning the exclusion of evidence or argument regarding Casillas's criminal and incarceration history, his prior and then-current drug use, and his statements concerning death or suicide, is DENIED;

2. Defendants' Motion in Limine #1, concerning Plaintiffs' expert William Harmening, is GRANTED IN PART AND DENIED IN PART, as expressed in the memorandum above; and

3. The Court GRANTS Defendants' request to bring "physical evidence consisting of a metal pipe" through security for trial.

IT IS SO ORDERED.

Dated:   February 13, 2019                     _____
                                                SENIOR DISTRICT JUDGE

14