UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. ANTHONY W. ISHII


| | |
|---|---|
| THE ESTATE OF CASIMERO CASILLAS, et al., | ) ) ) 1:16-cv-1042 AWI-SAB |
| Plaintiffs, | ) ) JURY TRIAL, DAY 4 |
| vs. | ) ) Jury Instruction Conference |
| CITY OF FRESNO, et al., | ) ) |
| Defendants. | ) ) |

Fresno, California                    Friday, March 1, 2019


REPORTER'S TRANSCRIPT OF PROCEEDINGS

**APPEARANCES OF COUNSEL**:

For the Plaintiffs:          LAW OFFICES OF DALE K. GALIPO
                             21800 Burbank Boulevard, Suite 310
                             Woodland Hills, California 91367
                             BY:  **DALE K. GALIPO**
                                  **ERIC VALENZUELA**

                             WILLIAM L. SCHMIDT,
                             ATTORNEY AT LAW, P.C.
                             P.O. Box 25001
                             Fresno, CA 93729
                             BY:  **WILLIAM L. SCHMIDT**

For the Defendants:          FERGUSON, PRAET & SHERMAN
                             1631 East 18th Street
                             Santa Ana, CA 92705-7101
                             BY:  **BRUCE D. PRAET**

REPORTED BY:  PEGGY J. CRAWFORD, RDR, CRR, Official Reporter

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

2

1    Friday, March 1, 2019                    Fresno, California

2    8:30 a.m.

3         (The following proceedings were had outside the presence

4          of the jury, to wit:)

5              THE COURT:  All right.  Please be seated.

6              All right.  And good morning.  Convening outside the

7    presence of the jury to have a preliminary, continuing

8    preliminary discussion on the jury instructions, verdict form,

9    and also to take up any other issues.

10             So before I get to the jury instruction, verdict

11   form, are there any specific issues that plaintiffs wish to

12   raise at this time?

13             MR. GALIPO:  So yes.  Two of them relate to the jury

14   instructions, so I will tell you the other two issues first.

15             THE COURT:  Okay.

16             MR. GALIPO:  One of them is we are going to play

17   portions of the dispatch tape still.  So we are going to do

18   that this morning at some point, maybe after the witness

19   Cheryl Casillas.  That shouldn't take more than three to five

20   minutes, because we are going to play a few portions, although

21   the entire tape will be in if the jury wants to listen to it.

22             And looking at my notes, other than the instructions.

23             But I will tell you if it is helpful at all, that we

24   have just decided we are going to withdraw the request for

25   punitive damages.

3

1          THE COURT:  Okay.

2          MR. GALIPO:  So that will take out that question from

3    the verdict form and that instruction, and there won't be a

4    second phase.  So whatever happens, one way or the other.

5          And I guess we did want to talk about the nominal

6    damage instruction when we get there, because I don't think

7    that's something we had talked about previously.

8          THE COURT:  Okay, sure.

9          First of all, turning to defense side then, on the

10   dispatch tapes, anything related to that that raised any

11   concern or anything?

12         MR. PRAET:  No.  I can confer with counsel.  I would

13   like to know what portions they intend to play so I know

14   whether I need to bring somebody in to explain.

15         MR. GALIPO:  We will make sure he knows.

16         THE COURT:  Great.  And so then, as I understand,

17   this is a formal request or motion by plaintiffs to withdraw

18   punitive liability, punitive damages phase.  So it is my

19   understanding that that will be deleted from the jury

20   instructions and from the verdict form.

21         Now, then, finally, then, with respect to nominal

22   damages, questions, concerns?

23         MR. GALIPO:  Yes, your Honor.  I'm always on the

24   fence with whether it is good or not good to give the

25   instruction, and whether or not, you know, it matters to the

4

1   Court.

2          Because I find it particularly appropriate in cases

3   where there may not be evidence of damages or compensatory

4   damages.  And then the thought is, well, at least you get the

5   nominal damages.  And the next thought is, does that trigger

6   the attorney fees or not?  Many courts say yes.

7          And so in that regards -- but I always get nervous,

8   of course, that if I get lucky enough to win on something,

9   that the jury might say, "Oh, there it is, one dollar."

10          So is the Court of the view that needs to be given

11   regardless of the parties' request?

12          THE COURT:  I guess it's sort of personal to me

13   because I got reversed because we did not include a nominal

14   damages instruction to the jury, even though the attorneys

15   agreed that they didn't want it.  So that's the caution.

16   Although the agreement was off the record.  So when it went up

17   on appeal, they said we are entitled at least to nominal

18   damages, and the Court agreed.

19          So I have always given it.  I don't know.  I have

20   never had a situation where the parties stipulate that it

21   would not be given.  I think that's probably okay because I

22   think parties can pretty much stipulate or agree to a deletion

23   of any aspect.  So that's something you can consider.

24          But absent a stipulation by both sides, I would have

25   to give it.

5

1          MR. GALIPO:  Okay.

2          MR. PRAET:  I can bail you out, your Honor.  We will

3   stipulate because we have probably the reverse concerns.  And

4   I don't think anybody asked, and I agree with Mr. Galipo, that

5   in a case where nobody is injured, maybe that's appropriate,

6   but in this case, obviously, if the jury finds there are

7   injuries, so there would be damages, perhaps low, perhaps

8   high.

9          So I don't think that necessarily either side asked

10  for it.  I was a little surprised to see it myself.  I

11  understand your reasoning, but we would stipulate that it

12  could be removed.

13         MR. GALIPO:  What I would like to do, once my clients

14  get here in a few minutes, explain that to them.  I don't want

15  to stipulate without their consent.  And then I will let you

16  know.

17         THE COURT:  But if both sides stipulate, then I will

18  not give it, but I want to make sure it is on the record that

19  both stipulate it would not be given.

20         So anything else preliminarily before I -- we delve a

21  little bit more into jury instructions?

22         Plaintiffs' side, anything?

23         MR. GALIPO:  No, your Honor.

24         THE COURT:  Anything for defense?

25         MR. PRAET:  No.

1     THE COURT:  Let me just mention -- Scott has flagged

2  certain things -- I did want to cover with you the jury

3  instructions that have some issues.

4     On CACI 1305, Battery By Peace Officer, we were going

5  to give that if I found that the portion of the instruction

6  that defense was requesting, which is included, this is at

7  page 12, in blue.

8     I have thought about this, and I'm looking at it and

9  I will get defense take, but basically, it says, "A police

10  officer who makes or attempts to make an arrest," et cetera,

11  "is not required to retreat."

12     In this case, there is no evidence that Officer

13  Shipman was attempting to make an arrest.  Just on general

14  vernacular, what we are talking about, he says it is

15  self-defense on his part.

16     So I'm not so sure that that's really appropriate in

17  this case.  I can see it where an officer is attempting to do

18  something with the subject, and the subject resists or

19  whatever.  And then whatever the degree of resistance is,

20  whether it is passive or active --

21     MR. PRAET:  Actually, your Honor, I did some research

22  at 1:00 o'clock this morning, and there is a California

23  Supreme Court case, *Hernandez versus Pomona*.  I can give you

24  the cite.  46 Cal.4th 501, at pages 518 through 519.  It is a

25  2009 California Supreme Court case, which was in fact a fatal

1  officer involved shooting.

2      There is some other issues in the case regarding

3  negligence and tactics, but we all know about *Hayes*.  But in

4  that case, 835a, which is the source of this language, was

5  given and was properly given.

6      And in that case, it was a pursuit.  The suspect had

7  fled from officers when they told him to stop, and when he

8  reached for his waistband and turned, several officers shot

9  him.

10      And the Court went into a pretty lengthy discussion

11  about the only purpose that the officers had in making contact

12  was to take him into custody, which is the same thing here.

13      I mean Officer Shipman has testified had Mr. Casillas

14  complied, he was going to get arrested.  Now, you know, in

15  that instant that the confrontation occurred, did he say, "You

16  are under arrest"?  Of course not.

17      But his intent was, the entire team, was to arrest

18  him.  So he was in fact making an arrest, but because of the

19  resistance, had to use deadly force.

20      So I think -- and even if you look at the additional

21  language of Penal Code, California Penal Code 835a, it talks

22  in terms of an officer need not -- I'm not quoting -- back

23  down because of the resistance or threatened resistance of a

24  suspect, which is exactly what we have here.

25      So I think -- and it is standard language.  It is not

1  something we added.

2          THE COURT:  Right.

3          MR. PRAET:  So I think if they are going to leave the

4  battery claim in, especially given the testimony of

5  Mr. Harmening yesterday about retreating, and the arguments

6  that have been made in opening, this whole issue of backing up

7  and retreating is pretty much out there to the jury.

8          And if the jury is misled to think, oh, I guess

9  Officer Shipman was supposed to retreat, that's contrary to

10  law.

11          MR. GALIPO:  My quick response -- I haven't read that

12  case recently that counsel cited -- but I'm in agreement with

13  the Court.  I think it is a point that I tried to make

14  yesterday, although I don't know how well I made it.

15          I just don't think it applies here, and I also think

16  by including it, I think it could mislead the jury in the

17  other way, that, you know, when these experts are talking

18  about other reasonable options, including even Officer

19  Shipman, and one of them is to back up if it is safe to do so,

20  this, I think, will mislead the jury in the context of this

21  deadly force case.  And that's the concern.

22          So admittedly, I have not recently read the case, but

23  I am in agreement with the Court that we don't believe this is

24  appropriate for this case.

25          THE COURT:  All right.  Let me do this.  I will go

1   ahead and read the case.  Now, if the case is squarely on

2   point, it has to be given, I will consider that.

3           But if it is simply -- and again, I have not read the

4   case, but if it is not inappropriate to give it, then that

5   really isn't --

6           MR. PRAET:  Your Honor, I think it is going to create

7   a problem if you don't give it, because, for example, in CACI

8   440, it talks about "Plaintiffs' claim that Trevor Shipman

9   used unreasonable force in detaining Casimero Casillas."

10          Well, the jury instructions are saying that the

11  intent of the officer was to detain him.  And now they are

12  saying the jury doesn't get to hear, in that attempt to detain

13  him, the officer has no legal duty to retreat.

14          MR. GALIPO:  Well, that's --

15          MR. PRAET:  It is in conflict if we don't give it.

16          MR. GALIPO:  Well, we could easily modify 440, if

17  counsel wants to make a point of that, that he used excessive

18  force against the decedent.  We could take out the "detaining"

19  language.

20          MR. PRAET:  But then are we going to eliminate all of

21  the other tactical things that now *Hayes* says the jury can

22  consider?  If some of the tactics are "coulda, woulda, shoulda

23  done this," isn't he entitled to a instruction that says that

24  the law under the California claim of battery, assuming they

25  leave that in, is that as to that claim, he doesn't have to

1  retreat.  The law tells him he doesn't have to.

2         I think it would be, quite frankly, error on the

3  battery claim not to include that because it is a statement of

4  the law.

5         THE COURT:  I will go ahead and read *Hernandez*.

6  Either I will leave it in or take it out, one way or the

7  other.

8         Scott has flagged a number of areas where I believe

9  counsel is going to provide language in terms of damages, et

10 cetera.  So we will just need to plug that in.

11        MR. PRAET:  There was a note from the Court on page

12 13 on the Bane Act.

13        THE COURT:  Yes.

14        MR. PRAET:  I don't know what the Court's meaning is.

15        THE COURT:  Okay.  Yeah.  We didn't find a definition

16 for reckless disregard, a standard instruction on it.  That's

17 just if you can meet and confer on that if you think that

18 there should be a definition.  If you can agree on a

19 definition, I can provide it.

20        Otherwise, I just want to flag that to you folks,

21 that if you want a definition, you will need to meet and

22 confer.  And if you can agree on language, then I will

23 certainly insert it.

24        MR. PRAET:  If there is not a definition requested by

25 either party, then is that instruction as is?

1      THE COURT:  Yes.  The others are fairly
2  self-explanatory.
3      Let me ask, with respect to the draft jury
4  instructions, anything else for plaintiff at this time that we
5  should be aware of or I should be looking at during the
6  morning?
7      MR. GALIPO:  Well, the only other thing I believe --
8  not positive on this -- one of the Ninth Circuit model
9  instructions on damages, it may be 5.2, talks about the
10  bracketed portions, which includes the loss of enjoyment of
11  life, which is what we were talking about yesterday.
12      So we believe that's part of the survival damage,
13  which I think that instruction is on page 19.
14      THE COURT:  Yes.  That is in there as Number 1.
15  Okay.  Anything else for plaintiffs' side?
16      MR. GALIPO:  No.  I will let you know shortly about
17  the nominal damages.
18      THE COURT:  Great.  Defense, anything on the jury
19  instruction?
20      MR. PRAET:  I think the only other note I had, your
21  Honor, was with respect to in the -- I don't know if you are
22  calling them "preliminary instructions," but -- the phase one.
23  On page 3, you had a question about whether or not there was a
24  need for 2.5, which was the transcript --
25      THE COURT:  Yes.

1          MR. PRAET:  -- instruction.  I don't think there is

2     any transcripts being presented to the jury.

3          THE COURT:  Okay.  So we wouldn't.  Obviously, if

4     there are any instructions that just do not apply, I will not

5     give them, and at our final instruction conference will make

6     sure that certain instructions are not given, and, obviously,

7     I won't give them.

8          Anything else for defense side?

9          MR. PRAET:  Not on the instructions, your Honor.

10         THE COURT:  Then on the verdict form?  I think on

11    that one, we are still working on the language with respect to

12    qualified immunity.  So we will certainly take that up at our

13    concluding instruction conference as to what kind of language

14    you would like to see in there.

15         Plaintiff?

16         MR. GALIPO:  Yes.  Well, with respect to the Question

17    2, we are still of the mind frame we don't need it and it

18    shouldn't be there, but if the Court feels it needs to give a

19    question, we think that's the appropriate question.

20         Obviously, Question 4, we no longer need because of

21    the punitive damage withdrawal.

22         THE COURT:  Yes.

23         MR. GALIPO:  And I guess we are still filling in a

24    little bit of language, starting on the damage questions,

25    going to page 5, Questions 10 or 11.

1      But I think the damages, based on Casimero Casillas'

2  pre-death pain and suffering and loss of enjoyment of life, we

3  feel would probably be appropriate.

4      And then maybe for 11, 12, 13, something like based

5  upon -- I'm trying to figure.  Is 11 -- okay.  I see 14.

6      So my thinking on the damages, your Honor, is that

7  there is really the two categories.  There is the survival

8  damages, which would flow from the Fourth Amendment, which

9  would be, you know, pre-death pain and suffering, and loss of

10  enjoyment of life.

11      And then the wrongful death damages, which is covered

12  in Question 14.  So I'm trying to think -- and I realize you

13  left this for discussion, but I'm trying to think what other

14  damages there would be that would apply to 11, 12, or 13.

15      Apparently, the Tribe paid for the funeral and burial

16  expenses, so we are not seeking those.

17      THE COURT:  Yeah.  On the damages portion, what I

18  would like you folks to do is meet and confer, see if that

19  needs -- if there is some that would be incorporated into each

20  other, or whether it should be expanded or reduced.  I'm

21  totally fine with that.

22      I just want to make sure, as we talked yesterday, in

23  terms of damages, that it is defined enough for both sides

24  that if the jury were to determine damages that there is no

25  concern, confusion regarding either duplicative damages or not

1    sure how it's to be apportioned, et cetera.

2          So you can meet and confer on that at our final

3    instruction conference.

4          MR. PRAET:  One preliminary comment, your Honor.  On

5    page 5 of that, with respect to, I guess there is four

6    separate questions assigned to damages for Casimero Casillas.

7          THE COURT:  Yes.

8          MR. PRAET:  Certainly nowhere else in any instruction

9    does it identify specific elements.  I think if you are going

10    to have any question, just say:  What damages do you award

11    based upon Casimero Casillas' survival action?

12          I mean when they are giving instructions, what that

13    entails, they don't go through and say -- quite honestly, I

14    don't believe the bracketed "loss of enjoyment of life" under

15    *Chaudhry* -- obviously he gets his pain and suffering, if there

16    was any, during the hour, hour and a half he may have

17    survived, but I don't believe there is any authority to say

18    that a survival action includes loss of enjoyment of life.

19          The only authority I know about is the *Chaudhry* case

20    which says, yes, he gets pain and suffering, assuming there is

21    some significant period of survival.  But I don't think he

22    gets loss of enjoyment of life.

23          I think that there should, if any, be one line, and

24    not four separate categories for his claim.

25          MR. GALIPO:  We believe he does.  And we are going to

1   see, in addition to the bracket, if we could get a case.

2         MR. PRAET:  One other comment on the qualified

3   immunity question.  You have the language, I think, that I

4   gave you yesterday, but I do believe that it needs to be,

5   whatever the question is, at the time of the shooting, because

6   that's obviously a big issue.

7         THE COURT:  Okay.

8         MR. GALIPO:  What other time would it be?

9         MR. PRAET:  I don't know.  Mr. Harmening seemed to

10   think that there were all kinds of stages where he wasn't a

11   threat, so.

12         MR. GALIPO:  Well, but as I understand it, they don't

13   answer Question 2 unless they answer Question 1 yes.

14         MR. PRAET:  Right.

15         MR. GALIPO:  So it seems like Question 1 has to

16   relate to the shooting.

17         MR. PRAET:  But I think for purposes of qualified

18   immunity, it has to be at the time of the shooting to give the

19   Court the leeway you may or may not need in deciding that

20   issue.

21         THE COURT:  Okay.  All right.  I may, just to make

22   clear.

23         Anything else preliminary that we should discuss, or

24   at least Scott and I should be aware of for jury instructions

25   or verdict form?

1          Plaintiffs' side, anything else?

2          MR. GALIPO:  No, your Honor.

3          THE COURT:  Defense side, anything?

4          MR. PRAET:  No, your Honor.  I think scheduling wise,

5     we should probably be finished with testimony by I'm guessing

6     11:00 o'clock.

7               *         *         *         *         *

8          MR. PRAET:  Do we have final instructions at this

9     point?

10         THE COURT:  Well, there are a couple of things.  I

11    think there was going to be some additional information

12    regarding damages.  Obviously, we are going to delete the

13    punitive liability, punitive damages portion.

14         I do want to address the defense concern regarding

15    battery, and whether or not to also give that one paragraph

16    about "need not retreat."

17         MR. PRAET:  My concern, your Honor, is that both

18    counsel obviously have an hour and a half now.  I would like

19    to work on closing, but if we don't know the instructions,

20    would the Court be willing to give us ten or 15 minutes now to

21    resolve those issues so we can prepare closing?

22         MR. GALIPO:  I will submit to whatever everyone

23    thinks is fine.  But it seems like about 99 percent of the

24    issues are already resolved and we can do it very quickly.  I

25    will defer to whatever.

1          MR. PRAET:  Maybe that one issue.

2          THE COURT:  All right.  There is the one.  Let's just

3    deal with that.  I think the others are relative and would not

4    really affect your closing arguments.

5          Now, I have read the *Hernandez* case, and the law is

6    the law, but it is in the context of negligence liability for

7    the officer's pre-shooting conduct.  In that case, the trial

8    court separated the federal claim from the state law claims,

9    did the federal claims first, the 1983.

10         The jury resolved that in favor of all defendants

11   except one.  The Court subsequently granted summary judgment

12   as to that, so that, essentially, on the federal claims, they

13   were in favor of the defendants.  And then the question was

14   whether or not that that was claim preclusion on any

15   subsequent trial on the state law claim.

16         The appellate court held that there was something

17   that was not addressed specifically in the federal claim, and

18   that was what the appellate court called a "pre-shooting

19   conduct," that is, the conduct of the officers, and whether or

20   not they were negligent in creating a situation by a high

21   speed pursuit, foot chase, release of the pursuit dog, et

22   cetera.

23         And that the California Supreme Court, in terms of

24   the context of pre-shooting negligence, held that there is no

25   basis for a pre-shooting negligence claim.  The Court did

1   discuss one of the officers, whether or not the officers

2   should have stopped, such that there would be no pre-shooting

3   action, chase, et cetera.

4        And the Court did indicate that where an officer has

5   probable cause to make an arrest, the officer is under no

6   obligation to retire in order to avoid a conflict, not bound

7   to put off the arrest until the more favorable time, et

8   cetera.  So that is basically the state of law, with respect

9   to the state law claim.

10        And the officer may press forward to make the arrest

11   using all the force reasonably necessary to accomplish that

12   purpose.  And then consistent with these principles, the Court

13   cites Penal Code section 835a, lists it as provides a peace

14   officer with reasonable cause to make an arrest, and that the

15   officer may use reasonable force to effect the arrest and need

16   not retreat or desist from his efforts to make the arrest by

17   reason of the resistance or threatened resistance of the

18   person being arrested.

19        The Court then finds California law expressly

20   authorized Cooper to pursue Hernandez and to use reasonable

21   force to make the arrest.

22        Now, the law is the law on that, although the context

23   here is in the context of whether or not there was a claim

24   remaining for pre-shooting conduct.

25        So I didn't see in that specific case a requirement,

if you will, of giving an instruction regarding need not retreat or desist.  And that's really problematic, because as I indicated before I read *Hernandez*, I was really not confident that that instruction applies in this particular case.

And after reading *Hernandez*, I'm still not convinced that it does.

MR. PRAET:  Your Honor, my biggest concern -- and we have had such a clean trial up till now -- is that it is clear from the evidence and the examination, that counsel will be focusing on the pre-shooting conduct of Officer Shipman, and in this narrow confine, whether or not he could have or should have retreated.  And they are going to argue that.  In fact their expert suggested that he should have done that.

We now know since *Hernandez*, that *Hayes*, the California Supreme Court, has said pre-shooting conduct goes to the issue of reasonableness on the negligence theory.

All that's coming in now.  And the Court is going to instruct in his efforts to detain Mr. Casillas, you may consider this, this, and this.

Now you are saying that we don't get to tell the jury that the law in the State of California on that negligence and battery claim is that this officer has no duty.

Their expert has implied that he did have a duty. That's not the law.  And I think he is entitled to -- it is

1  hopefully a minor issue and maybe not become an issue, but I

2  think it is going to be extremely prejudicial to Officer

3  Shipman if the jury is not told what the law is in the State

4  of California with respect to an officer's duty to retreat or

5  not.

6          MR. GALIPO:  Your Honor --

7          THE COURT:  Well, it certainly did not say, did not

8  use the term "duty."  They said one of the many factors that

9  were available, purportedly available to Officer Shipman was

10  he could have stepped back.

11          MR. PRAET:  He said he should have.

12          THE COURT:  Well, yeah.  He should have, that's one

13  of the things.  But the law may provide that there is no

14  obligation to do so, but an officer can choose to do so or

15  not.

16          Whether or not there is a law in place or not, it is

17  all the totality of the circumstances.  And certainly I'm not

18  precluding, and certainly encourage, if you please, the

19  argument that under the circumstances, he couldn't retreat.

20  As a factual matter, he could not retreat.  He has got a guy

21  coming at him.  He is in unfamiliar territory.  He is on

22  steps.

23          And the jury can determine of the many things that

24  the plaintiff is going to contend that Mr. Shipman should have

25  done, including using a Taser, commands, whatever, that he

1   should have backed up.

2       And obviously, the defense position is, no, he did

3   not have the opportunity to do so, and it would have been

4   foolish or suicide, whatever, to do that.

5       I'm not precluding that argument.  It is just that in

6   terms of the law, regardless of what the law provides, he

7   still has the choice of either backing up or not under the

8   circumstances of the case.

9       MR. PRAET:  Even if it doesn't come through the

10  Court, am I at least free to argue that he has no legal

11  obligation to?

12      THE COURT:  Sure.  Yeah.  There is no -- there is

13  nothing that says that he had to retreat.  There was no legal

14  obligation for him to retreat under the circumstances.

15      MR. PRAET:  Can I go so far as to say the law doesn't

16  require him to retreat?

17      THE COURT:  That sounds reasonable.

18      Plaintiffs' position?

19      MR. GALIPO:  Again, we are in agreement with the

20  Court.  The problem is, where I think the issue I have is that

21  I believe in a deadly force encounter with a weapon, then one

22  of the -- stepping back could be under the other reasonable

23  alternatives.

24      So for Mr. Praet to clearly state that, you know, the

25  law specifically says he doesn't have to step back, no matter

1   what, I'm not so sure that's accurate, but I guess I will have

2   to wait to see how it is argued.

3          I think it is appropriate to make reasonable

4   arguments based on the evidence and the law.

5          But I think for him to make an emphatic statement

6   that may be a little bit different from what the law actually

7   is, I don't want to have to object during his closing.  But I

8   don't know exactly how he wants to phrase it.

9          MR. PRAET:  And I don't want an objection in the

10  middle of closing.  I would rather get this cleared.

11         THE COURT:  I suppose based on the evidence, there is

12  no evidence that he was required to retreat.

13         MR. GALIPO:  Something like that would be fine, as

14  opposed to talking about the law.

15         MR. PRAET:  But it is the law in the State of

16  California.

17         MR. GALIPO:  Well, that's another issue, as to

18  whether it applies to this factual scenario.

19         MR. PRAET:  We were instructed by the Court, and I

20  specifically avoided with the experts talking about the law.

21  I mean I could have had Mr. Williams, does the law in the

22  State of California require officers to retreat, but I didn't

23  want to step into that area of having the expert, because that

24  comes from the Court.

25         And yet now we are viewing this case in a vacuum and

1  saying, well, gee, that is the law, but the jury doesn't get
2  to know that.
3      I just, I don't see how that's not extremely
4  prejudicial to the defendant and of minimal, if any,
5  prejudice, to the plaintiffs.
6      MR. GALIPO:  Well, we believe it would be prejudicial
7  to include it.  That's why we objected to it.
8      MR. PRAET:  Maybe just say with regard to the battery
9  claim, the officer is not required to retreat.  Limit it.
10      THE COURT:  Well, that's the jury instruction that is
11  separated out, and that was the reason it was separated out.
12      Initially, the thought was, okay, let's just go ahead
13  and fold in the battery claim with the 1983 claim.  If the
14  jury finds liability on 1983, they would also find liability
15  on the battery, and then this issue came up.
16      So basically, if I don't include that, then it is
17  folded in.  If I include it, it's not.  It's going to be a
18  totally separate instruction, and that's really where we were
19  at.
20      The only question now is whether or not -- assume
21  that I could give that separate instruction and separate out
22  the battery.  The only question is whether I'm going to put
23  that language in the battery instruction.
24      MR. PRAET:  I think you already have a separate
25  instruction on the battery.

1          THE COURT:  I do.

2          MR. PRAET:  So the only question is whether the model

3   language from that instruction 1305, which is a statement of

4   the California law, whether this officer is entitled to that

5   under these circumstances, where they are challenging his

6   pre-shooting tactics.  I think the answer has to be clearly,

7   he is.

8          THE COURT:  Anything else on behalf of plaintiffs'

9   side on this issue?

10          MR. GALIPO:  Not on this issue, your Honor, but we

11   have decided we are going to keep nominal damages in and --

12   just so you know.

13          THE COURT:  All right.

14          MR. PRAET:  And your Honor, on that issue, and

15   forgive me, early this morning or whenever it was, I know

16   there is case law, I don't have it, that says if there are

17   actual damages, then nominal damages is an inappropriate

18   instruction to give.

19          And I think in this case, obviously, you have a

20   death.  If they find in favor, then I think they must find

21   damages, and I think your damage instruction already tells

22   them that.

23          THE COURT:  All right.  Okay.  Well, I'm going to go

24   ahead and give that because if they find liability and they

25   don't determine that the damages are more than nominal, and

1   they have no instruction on that, then that is error.  I can

2   tell you right now, that's going to be error on my part if I

3   don't give it.

4           And I can't guess that, yes, they will find liability

5   and, yes, they will have to find damages, because obviously,

6   there has been a mixed bag with respect to the plaintiffs in

7   this case as to whether or not they are indeed entitled to

8   more than nominal damages.

9           I'm not saying they would not be entitled to it.  I'm

10  saying that's a possibility.

11          MR. PRAET:  Okay.

12          THE COURT:  Let me think about it.  Right now, I will

13  take another look.  I know Scott has been doing some further

14  research beyond *Hernandez*.  I will check on that.

15          You are just going to have to prepare your closing

16  argument, whether or not I allow it or not.  Either you are

17  going to include that or not.  And it should be a fairly small

18  part of your closing argument, so it shouldn't impact your

19  closing argument.

20          I think, otherwise, in terms of the jury instructions

21  and verdict form, anything else of substance that you want to

22  work on over the noon hour that I need to rule on?

23          MR. GALIPO:  No.

24          MR. PRAET:  No.  1:30 then or close to it?

25          MR. GALIPO:  We will have a brief discussion and

1  then --

2          THE COURT:  We will have a final instruction

3  conference, but I would hope that shortly after 1:30, you

4  know, we are going to take whatever time we need, but, yeah, I

5  would anticipate the next thing we would do for the jury would

6  be for me to give jury instructions and we get right into

7  closing arguments.

8          MR. PRAET:  Okay.

9          MR. GALIPO:  Thank you, your Honor.

10      (The lunch recess was taken.)

1        AFTERNOON SESSION

2   1:30 p.m.

3        THE COURT:  All right.  Go ahead and have a seat.  On

4   the record, outside the presence of the jury.

5        Before I get to the instructions and the verdict

6   forms, is there anything else we should take up for

7   plaintiffs' side, anything?

8        MR. GALIPO:  No, your Honor.

9        THE COURT:  Defense side?

10       MR. PRAET:  No, your Honor.

11       THE COURT:  Okay.  We will get to the jury

12  instructions.

13       Let me just say again, and obviously, there has been

14  rather healthy discussion regarding the specific instruction

15  on the battery state law claim, and I ultimately decided that

16  I will not give that portion.

17       I think there was some discussion before that if I

18  didn't give that, and the reason we separated it out was

19  because if I was going to give that.  And I don't know if the

20  thought now is, okay, we are going to fold it into the 1983

21  claim, and if the jury finds liability on 1983, then I would

22  simply rule that that would also apply to the state law

23  battery claim.

24       But at any rate, let's cover that first.  Anything

25  further on that issue?  I know it has been fully discussed,

1    but anything else by either side just on that?  I'm going to

2    go through all the instruction with you.

3         MR. PRAET:  On that one particular instruction, your

4    Honor, and I see in the final set that we have been given that

5    1305, the state battery instruction, has been completely

6    eliminated.

7         THE COURT:  Right.

8         MR. PRAET:  Now, I'm a little confused.  If the jury

9    finds 1983 excessive force and awards damages, or if they

10   don't find excessive force under 1983, how do we differentiate

11   from battery damages in 1983 if it is all in one?

12        THE COURT:  Again, I was working on the assumption

13   the fact we discussed folding them in together, that would not

14   be an issue.

15        But if it is, then I need to be aware of that so we

16   can made modifications.

17        What's the plaintiffs' take on that?

18        MR. GALIPO:  Well, I don't see it as an issue because

19   I thought we generally agreed that the same principle would

20   apply so that if there was a finding of "no" on the excessive

21   force claim, that would be "no" to Fourth Amendment and

22   battery and Bane Act, understanding there is a separate

23   element, and if it was "yes," it would be obviously the

24   opposite.

25        The verdict form should lead the jurors to the right

1   spot.  So if they don't find on a Fourth Amendment claim, they

2   answer "no" to Question 1, they would never get, presumably,

3   to the survival damages, because as I understand it, those

4   flow from the Fourth Amendment claim, to some extent, the Bane

5   Act claim.

6          And if they answer "yes" on either the excessive

7   force claim or the negligence claim, that would trigger the

8   state wrongful death damages.  So I don't see a problem, as

9   long as the verdict form takes them to the right spot.

10          At least on behalf of the plaintiffs, we would be

11   agreeable, if the Court is not inclined to give that section,

12   and that was the section that we were contemplating

13   necessitating the battery instruction, then I'm fine with just

14   giving the 1983 instruction, having it apply to both, and

15   having an agreement that the one question on the verdict form

16   would cover the claims as we previously discussed.

17          THE COURT:  Defense?

18          MR. PRAET:  Here's my problem under the law.  The

19   Ninth Circuit and California Supreme Court have said the

20   standards are not the same.

21          As you know, under state law, there is a broader

22   totality of the circumstances, which includes, unlike 1983,

23   the pre-shooting tactics of the officer, which is not

24   appropriate under 1983.

25          And now we have combined the two, and yet precluded

1  the officer from having the state law that corresponds with

2  those tactics stated that he doesn't have the duty to retreat.

3      I just think -- obviously, we are hopeful that it is

4  never an issue and we get a defense verdict, but if there

5  isn't, it is going to be very muddy, and a strongly implied

6  confusion on the part of the jury that one standard was

7  applied to two different claims, which we all know the law has

8  two different standards for.

9      MR. GALIPO:  Just a quick response.  The pre-shooting

10  negligence, that's only a part of the negligence claim under

11  *Hayes*.  And that's why one of the factors under CACI 440 talks

12  about that.

13      So I, obviously, I don't want to relitigate it.  We

14  agree with the Court's decision on not to give that.  And I

15  don't see it unduly prejudicial to either side.  That's our

16  position.

17      THE COURT:  All right.  And I do want to note,

18  obviously, when I do fold it together, and they are dealing

19  with the 1983 claim, on the 9.25 instruction on excessive

20  force, factor 6 is the availability of alternative methods.

21      And, obviously, that is where the parties are

22  entitled and, I'm sure, will argue, as to whether or not

23  alternative means should have been used or should not have

24  been used in this particular situation, including, but not

25  limited to, whether or not he should have retreated or

1   repositioned.

2          MR. PRAET:  Mr. Galipo just said under the state law,

3   even a negligence claim, where the appreciating tactics are at

4   issue, we are once again being deprived of the state law

5   defense that this officer is entitled to, that even as to the

6   negligence claim, if that's what he is limiting it to, the

7   jury isn't going to know what the law is.

8          If you just want to give that portion of 1305 as to

9   the negligence claim, California law provides that an officer

10  has no duty to retreat, then we would compromise with that.

11         MR. GALIPO:  Well, I think it appears the Court has

12  given this a lot of thought, and I don't want to spend time

13  relitigating it.  We are in agreement that it should not be

14  given.

15         THE COURT:  All right.  Okay.  Yeah.  I think both

16  sides have been adequately heard, and I have given it as much

17  consideration as I possibly can under all the circumstances.

18         MR. PRAET:  What are the parameters of my closing

19  argument on what I can say with respect to the ability to

20  retreat?

21         THE COURT:  Well, the parameters is not so much a

22  duty, but under 9.256, that the alternative -- any allegation

23  of alternative of retreating simply does not apply in this

24  case for the reasons, A, B, C.

25         MR. PRAET:  Okay.  Am I permitted to say the reasons

1    that under California law an officer has no duty to retreat,

2    or as an alternative method?  I mean I have viewed factor 6 as

3    Taser, baton, whatever, not an alternative method of force

4    being you can run away.

5            THE COURT:  No, because I really do think that does

6    create a concern.  Either I'm going to give -- well, the law,

7    no legal duty to retreat or not, and I'm not.

8            So it is not going to be any part of closing

9    argument.  One of the factors is in terms of retreating or

10   whatever, that under the circumstances, the facts of this

11   case, that that was not a viable alternative.

12           MR. PRAET:  At least the officers are not trained to

13   retreat?  That certainly is evidence before the Court, before

14   the jury.

15           THE COURT:  Well, whatever was testified to is fair

16   game.  I mean as one of the experts said, they are not trained

17   to retreat.  If that's what he said, and that's what the jury

18   has heard, then that's fair game.

19           MR. PRAET:  All right.  My only other question on the

20   special verdict form, and I know the Court was massaging

21   Question Number 2, but the version I now see says:  Did

22   Casimero Casillas pose an immediate threat of death or serious

23   bodily injury to Officer Shipman by charging at him with a

24   metal pipe?

25           And I don't think there is any evidence or anybody is

1   going to be able to argue that he ever charged at him.  I

2   thought we were just going to say, "serious bodily injury to

3   Officer Shipman at the time of the shooting."

4          I don't think a jury can even find that he was

5   charging, and that's what you are asking them to conclude.

6          MR. GALIPO:  Well, we believe the wording is

7   appropriate because if, hypothetically, they found "yes" on

8   Question 1, it would take that type of affirmative answer, we

9   believe, on Question 2 for the Court to even consider

10  qualified immunity.

11         So we believe unless the jury factually found that,

12  we can't see how qualified immunity could be granted in the

13  light of a "yes" answer to Question 1.

14         MR. PRAET:  I can answer that question right now.

15  There is no evidence he was charging.

16         THE COURT:  All right.  I'm not wedded to that word.

17  I could put, "coming at him."

18         MR. PRAET:  Just say, "serious bodily injury to

19  Officer Shipman at the time of the shooting," period.

20         I wouldn't say "by charging" or even mention "metal

21  pipe."  Just "at the time of the shooting."

22         THE COURT:  Plaintiffs' thought on that?

23         MR. GALIPO:  We would be okay with "at the time of

24  the shooting."

25         THE COURT:  Okay.  All right.

1      MR. GALIPO:  I do think that we could probably take

2  off the "Phase One" caption on the front page since we are not

3  going to have a second phase.

4      THE COURT:  All right.  Okay.  That's fine too.  We

5  will do that.

6      While we are on the verdict form, let me just

7  indicate, we are supposed to talk about how to deal with, if

8  the jury were to find liability and damages, how to apportion

9  it out.  What is suggested here is a lump sum, and then a

10 percentage for each plaintiff.  I know plaintiffs has

11 submitted a proposal that would list each plaintiff, and then

12 past and future loss.

13     I'm looking to what I propose, but I'm certainly open

14 to either side as to the most -- the best way to pose it to

15 the jury so there is no confusion afterwards is to, if there

16 are damages, who is entitled to what.

17     So I am certainly open to any other comments on that.

18     MR. PRAET:  The defense side, your Honor, I think

19 that the Court's, if you call it a compromise position, works.

20     THE COURT:  Plaintiffs' side?

21     MR. GALIPO:  We are okay with it.

22     THE COURT:  Okay, great.  Anything else with the

23 verdict form that we need to discuss or needs some alterations

24 or changes, either side?

25     MR. PRAET:  No.  Just can we have a copy of the final

1    verdict form for our closing?

2           THE COURT:  Yes.  Before I have the jury come in,

3    Scott is going to make the changes.  We will print out a fresh

4    copy with all the final information.

5           And so let me go through quickly, so, you know, some

6    of the changes.  At page 5, Evidence For a Limited Purpose,

7    there was the -- there wasn't much.  There was a small portion

8    with respect to the objection to defendants' expert testifying

9    regarding Taser, and I told the jury that it would be allowed

10   only for the limited purpose of, basically, credibility or

11   rebuttal.

12          So I don't need to put it in, if you think it's

13   confusing, but otherwise, I would put, "Some evidence has been

14   admitted only for a limited purpose.  When I instructed you,"

15   et cetera.  And then that bracketed portion would not be

16   given.

17          If there is no objection or concerns, that's what I

18   would do, without specifically identifying.

19          MR. PRAET:  I don't think it's needed, your Honor.  I

20   think it would be more confusing, not that they don't remember

21   what the Court said, but.

22          THE COURT:  Plaintiffs' side?

23          MR. GALIPO:  We don't believe it is necessary to be

24   read either.

25          THE COURT:  I will not give that one, okay.

1        Then on 9.25, at the very end, on the page 14,

2  obviously the pagination will change, but regarding the POST

3  standards that were incorporated at the very end.

4        Then at page 27, Readback or Playback.  Of course, I

5  would only give that if the jury requests readback or a

6  playback of the transmissions.  So I will not give that one

7  during my general charge to the jury.

8        Okay.  With that information, and again, Scott will

9  go ahead and print out the -- what would be the final jury

10  instructions, but anything else on the jury instructions for

11  plaintiffs' side?

12        MR. GALIPO:  No, your Honor.

13        THE COURT:  Defense side?

14        MR. PRAET:  No, your Honor.  Just again, the Rule 50

15  motion.  Is the record secure in terms of our having made one

16  or reserved?  I mean I can argue it now if you want, or

17  reserve in the event of an adverse verdict.

18        THE COURT:  Whichever you folks prefer.  As far as

19  I'm concerned, I will have deemed that you have made the Rule

20  50 motion.

21        Actually, if you want, you can go ahead and make

22  it -- I mean not make it, but indicate that you are making a

23  Rule 50 motion, and I will deem you have made it.

24        And if you want to elaborate on it at a later point

25  in time while the jury is deliberating, that's fine.  If you

1  feel you should go ahead and make it now, that's okay too.

2  I'm perfectly fine either.  Whichever both sides prefer to do

3  is fine with me.

4          MR. PRAET:  Well, I suppose for the record, then,

5  your Honor, at this point, the defendants would make a Rule 50

6  motion, indicating that the plaintiffs have not met their

7  burden.  I think the evidence is very clear, almost to the

8  point of being undisputed at this point, that Mr. Casillas

9  presented an imminent threat to Officer Shipman at the moment

10  of the shooting, and that defendants are entitled to a

11  directed verdict.

12          THE COURT:  All right.  Plaintiffs' response?

13          MR. GALIPO:  I will probably go into much more detail

14  in my argument, but in short, we think there is an abundance

15  of evidence from which a jury could find in favor of the

16  plaintiffs.

17          We believe there is more evidence and more disputes,

18  including considering the circumstantial evidence and any

19  reasonable inferences that could be taken from them, and much

20  of the same discussion we had at the motion for summary

21  judgment, which the Court denied, we think there is much more

22  evidence in the record to support the Court allowing this

23  matter to go to the jury and denying the Rule 50(a) motion.

24          THE COURT:  Anything further on the Rule 50 motion?

25          MR. PRAET:  No, your Honor.  We will submit.

1    THE COURT:  I'm going to deny the motion without

2    prejudice.  This case, as both counsel has noted, really is a

3    matter of determination of facts, that is, credibility of

4    witnesses, reasonable inferences to be drawn from the

5    evidence.  That is solely within the province of the jury and

6    it is not for the Court to attempt to determine the

7    credibility or inferences.

8    I do find that there is, obviously, sufficient

9    evidence in this case for the jury to find for the plaintiffs,

10   also enough to find for the defendants, but it is totally a

11   factual issue for the jury to make factual findings, and so I

12   will deny the motion without prejudice.

13   MR. PRAET:  Thank you, your Honor.

14        *         *         *         *         *

15

16   I, PEGGY J. CRAWFORD, Official Reporter, do hereby

17   certify the foregoing transcript as true and correct.

18

19   Dated:  11th of March, 2019        /s/ Peggy J. Crawford
                                        PEGGY J. CRAWFORD, RDR-CRR
20

21

22

23

24

25