1

2

3

4

5          **UNITED STATES DISTRICT COURT**

6          **EASTERN DISTRICT OF CALIFORNIA**

7

8    ESTATE OF CASIMERO CASILLAS,              CASE NO. 1:16-CV-01042-AWI-SAB
     et al.,
9
                          Plaintiffs           **ORDER ON PLAINTIFFS' MOTION**
10                                             **FOR ATTORNEYS' FEES**
     v.
11                                             (Doc. No. 130)
     CITY OF FRESNO, et al.,
12
                          Defendants
13

14

15                         __INTRODUCTION__

16         This case involves a police shooting in Fresno. Plaintiffs prevailed on several claims at

17   trial, including a claim under 42 U.S.C. § 1983 for excessive force in violation of the Fourth

18   Amendment to the United States Constitution, and Plaintiffs now seek attorneys' fees pursuant to

19   42 U.S.C. § 1988. As set forth below, the Court will grant the motion in part and with

20   modifications.

21              __FACTUAL AND PROCEDURAL BACKGROUND__

22         This case arises out of a September 7, 2015 incident in which Trevor Shipman, an officer

23   employed at the time by the Fresno Police Department ("Fresno PD"), shot and killed Casimero

24   Casillas on property owned by Robert Verduzco and Jamilla Lindsey. See Doc. No. 1 ¶¶ 1, 6, 12-

25   14.

26         The initial Complaint, comprising 13 pages, was filed by Fresno attorney William Schmidt

27   on July 19, 2016 and alleged six causes of action on behalf of Casillas's survivors and estate,

28   including: (i) a claim against Shipman, the Fresno PD and the City of Fresno under 42 U.S.C. §

1983 for use of excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution, Doc. No. 1 ¶¶ 16-20; (ii) a *Monell* claim against the Fresno PD and the City of Fresno for supervisory liability, failure to train and such under 42 U.S.C. § 1983, id. ¶¶ 21-32; (iii) a claim against Shipman and, vicariously, the Fresno PD and the City of Fresno for battery, id. ¶¶ 33-38; (iv) a claim against Shipman and, vicariously, the Fresno PD and the City of Fresno for negligence, id. ¶¶ 39-44; (v) a claim against Shipman, the Fresno PD and the City of Fresno for conspiracy to deprive Casillas of his constitutional rights, id. ¶¶ 45-46; and (vi) a claim against Shipman and, vicariously, the Fresno PD and City of Fresno for violating California's Bane Act in Section 52.1 of the California Civil Code by interfering with Casillas's constitutional rights while acting in the course and scope of duty. Id. ¶¶ 49-53.

In addition to the foregoing causes of action on behalf of Casillas's survivors and estate, the Complaint alleged two causes of action on behalf of Verduzco and Lindsey against all three Defendants including: (i) a claim for property damage – including "a damaged door, bullet holes and blood left on the[] floor" – resulting from the Casillas shooting, Doc. No. 1 ¶¶ 47-48; and (ii) a claim for negligent infliction of emotional distress. Id. ¶ 42.

On September 15, 2016, Mr. Schmidt filed a First Amended Complaint ("1AC") comprising 14 pages. Doc. No. 5. The 1AC added four plaintiffs, with language describing their relationship to the Decedent; removed the conspiracy claim in the initial Complaint; and replaced the claim for negligent infliction of emotional distress on behalf of Verduzco and Lindsey in the initial Complaint with a claim for intentional infliction of emotional distress on behalf of Verduzco and Lindsey. Id. ¶¶ 4, 45-49.

On November 6, 2017, Plaintiffs brought Dale K. Galipo and his law firm, which is based in Los Angeles County, into the case. Doc. No. 11. On August 10, 2018, the parties stipulated to dismissing certain claims, including the *Monell* claim and the claims on behalf of Verduzco and Lindsey. Doc. No. 19 at 1:21-25.

On August 31, 2018, Defendants filed a motion for summary judgment seeking findings that: (i) Shipman's use of force was objectively reasonable; (ii) Plaintiffs failed to meet the heightened "purpose to harm" standard required for a Fourteenth Amendment claim for

deprivation of a familial relationship; (iii) Shipman was entitled to qualified immunity; and (iv) Plaintiffs' pendent state claims failed in the absence of a constitutional violation. Doc. No. 21, p. 2 of 21, lines 3 through 12. The Court granted summary judgment in Defendants' favor on Plaintiffs' substantive due process claim for disruption of familial relations under the Fourteenth Amendment, but otherwise denied the motion, allowing Plaintiffs to "proceed to trial on their excessive force claim under the Fourth and Fourteenth Amendment, as well as their California state law claims for battery, wrongful death-negligence, and interference with federal or state rights under the Bane Act …." Doc. No. 26 at 15:6-23.

Trial commenced before this Court on February 26, 2019 and lasted four days, plus a day and a half of jury deliberations. Doc. Nos. 75-78 & 83. In connection with Plaintiffs' battery claim and claims under the Fourth Amendment and California's Bane Act, the jury returned a verdict finding that Shipman had used excessive force and that Casillas did not pose an immediate threat of death or serious bodily injury to Shipman at that time of the shooting, but that Shipman did not demonstrate a reckless disregard for Casillas's constitutional right to be free from excessive force. Doc. No. 88 at 2. The jury further found that Shipman was negligent and that Shipman's negligence was a substantial factor in Casillas's death. Id. at 3. In addition, the jury found that Casillas was negligent, but only allocated 40% of negligence relating to the shooting to Casillas and found that Casillas's negligence was not a cause of his death. Id. at 4. Finally, the jury awarded $4,750,000 in damages, including $250,000 for Casillas's pain and suffering prior to death, $2,000,000 for Casillas's loss of enjoyment of life, and $2,500,000 for Plaintiffs' loss of love, companionship and financial support. Id. at 6.

The Court entered judgment in accordance with the jury verdict on March 7, 2019, Doc. No. 90, and on March 21, 2019, Defendants brought a motion for a new trial. Doc. No. 99. An evidentiary hearing was held in connection with that motion on May 30, 2019, and the motion for a new trial was denied on July 3, 2019. Doc. No. 129. Plaintiffs then brought the instant motion for attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, as set forth in 42 U.S.C. § 1988, based on the fact that Plaintiffs prevailed on the Fourth Amendment excessive

1   force claim brought under 42 U.S.C. § 1983.[1] Doc. No. 130, Part II.B.

2                                                     **LEGAL STANDARD**

3       The Civil Rights Attorney's Fees Awards Act of 1976 provides, in pertinent part, that "[i[n

4 any action or proceeding to enforce a provision of section[] ... 1983 ... of [Title 42], ... the court, in

5 its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs ...."

6 42 U.S.C. § 1988(b). "The purpose of § 1988 is to ensure effective access to the judicial process

7 for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (citation

8 and internal quotation marks omitted). As such, a court's discretion to deny attorneys' fees under §

9 1988 "is very narrow and . . . fee awards should be the rule rather than the exception." Mendez v.

10 County of San Bernardino, 540 F.3d 1109, 1126 (9th Cir. 2009), overruled on other grounds by

11 Arizona v. ASARCO LLC, 773 F.3d 1050 (9th Cir. 2014) (citation and internal quotation marks

12 omitted).

13       As set forth by the Ninth Circuit in *Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d

14 1041 (9th Cir. 2000), an award of reasonable attorneys' fees is determined through the hybrid

15 lodestar multiplier approach:

16

17         The lodestar/multiplier approach has two parts. First, a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. See D'Emanuele [v. Montgomery Ward &

18         Co., Inc., 904 F.2d 1379, 1383 (9th Cir. 1990)]; Hensley, 461 U.S. at 433 []. The party seeking an award of fees must submit evidence supporting the hours worked

19         and the rates claimed. See Hensley, 461 U.S. at 433 []. A district court should exclude from the lodestar amount hours that are not reasonably expended because

20         they are "excessive, redundant, or otherwise unnecessary." Id. at 434 []. Second, a court may adjust the lodestar upward or downward using a "multiplier" based on

21         factors not subsumed in the initial calculation of the lodestar.[fn] See Blum v. Stenson, 465 U.S. 886, 898–901[] (1984) (reversing upward multiplier based on

22         factors subsumed in the lodestar determination); Hensley, 461 U.S. at 434 n.9 [] (noting that courts may look at "results obtained" and other factors but should

23         consider that many of these factors are subsumed in the lodestar calculation). The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier

24         may be used to adjust the lodestar amount upward or downward only in " 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and

25

---

26 [1] Plaintiffs' notice of motion also references a right to attorneys' fees under Section 52.1 of the California Civil Code. Doc. No. 130 at page 2 of 32, line 6. That issue is not directly addressed in this Order because it was not briefed, but

27 in any event, the methodology for calculating attorneys' fees under Section 52.1 parallels the methodology for calculating attorneys' fees under 42 U.S.C. § 1988. See McKibben v. McMahon, 2019 WL 1109683, at *7 (C.D. Cal. Feb. 28, 2019) (using lodestar method in calculating award of attorneys' fees under both 42 U.S.C. § 1988 and Section

28 52.1 of the California Civil Code).

detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 [] (1986) (quoting Blum, 465 U.S. at 898–901 []); Blum, 465 U.S. at 897 []; D'Emanuele, 904 F.2d at 1384, 1386; Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1988).

Van Gerwen, 214 F.3d at 1045; see also, McElwaine v. U.S. West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999); cf. Ketchum v. Moses, 24 Cal.4th 1122, 1133–36 (2001) (discussing the lodestar approach in California).

"[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum, 465 U.S. at 896 n. 11. The Ninth Circuit has explained that:

> Once the number of hours is set, "the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." [Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986).] This determination "is not made by reference to rates actually charged by the prevailing party." Id. The court should use the prevailing market rate in the community for similar services of lawyers "of reasonably comparable skill, experience, and reputation." Id. at 1210–11.

D'Emanuele, 904 F.2d at 1384.

"The 'relevant community' for the purposes of determining the reasonable hourly rate is the district in which the lawsuit proceeds." J&J Sports Prods., Inc. v. Marini, 2018 WL 2155710, at *1 (E.D. Cal. May 10, 2018) (quoting Sanchez v. Frito Lay, 2015 WL 4662535, at *17 (E.D. Cal. Aug. 5, 2016) (internal quotation marks omitted)); accord Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." (citation and internal quotation marks omitted)). Rates outside the forum may be used "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997) (quoting Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992)) (internal quotation marks omitted).

Finally, "[t]he essential goal in shifting fees … is to do rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838 (2011). Thus, "trial courts need not, and

indeed should not, become green-eyeshade accountants." Id. Rather, they "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Id.

**DISCUSSION**

The jury unanimously found in Plaintiffs' favor on all three of the claims that went to trial in this action – including Plaintiffs' claim under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment – and awarded Plaintiffs damages of $4,750,000. See Doc. No. 130 at 3:22-26. Defendants do not dispute that Plaintiffs were the prevailing parties at trial for purposes of attorneys' fees under 42 U.S.C. § 1988 at this stage in the proceeding, see Doc. No. 142 at 1:2-4, and the Court will therefore focus on determining what fee award is reasonable under the facts of this case. See Hensley, 461 U.S. at 433. To do so, the Court will perform the steps required for the lodestar calculation and then address the question of whether any adjustment to the lodestar fees is warranted. See Van Gerwen, 214 F.3d at 1045.

**I.    The Requested Hourly Rates**

**A.  The Parties' Arguments**

**i.  Plaintiffs' Opening Brief**

Plaintiffs were represented by five attorneys in this action: Dale Galipo, Eric Valenzuela, Martin Sincich, William Schmidt and Jeffrey Eisinger. Mr. Galipo, Mr. Valenzuela and Mr. Sincich practice law together in Los Angeles County, while Mr. Schmidt and Mr. Eisinger practice together in Fresno. As to the Los Angeles attorneys, Plaintiffs request rates of $1,200 per hour for Mr. Galipo, Doc. No. 130 at 13:13-20; $650 per hour for Mr. Valenzuela, id. at 13:22-28; and $400 per hour for Mr. Sincich. Id. at 20:22-27. As to the Fresno attorneys, Plaintiffs request $585 per hour for Mr. Schmidt, id. at 17:15-20, and $400 per hour for Mr. Eisinger. Id. at 19:21-26. Plaintiffs assert in their opening brief that these rates are reasonable because they reflect the experience, skill and reputation of Plaintiffs' counsel, and are commensurate with prevailing rates "throughout California." See e.g., id. at 8:1-3; 8:21-22; 13:22-24; 17:15-18; 22:24-25. The specific justification provided by Plaintiffs as to the rate sought for each attorney is summarized below.

*Mr. Galipo's Requested Rate of $1,200 per Hour*

Plaintiffs argue in their opening brief that Mr. Galipo is entitled to $1,200 an hour in this action because "top litigators at top law firms are billing their clients between $1,200 and $1,800 per hour for trial work and preparation" and because Mr. Galipo's "contribution to the civil rights community in handling [] challenging cases [such as the one at bar] and prevailing the majority of the time justifies a substantial increase" over his "court-awarded hourly rate" in other cases. Doc. No. 130 at 13:13-20.

Plaintiffs submit three types of evidence to support Mr. Galipo's request for a rate of $1,200 an hour: a declaration from Mr. Galipo himself; fee award orders from six other cases; and declarations from five attorneys with experience in civil rights actions – Paul L. Hoffman, John Burton, Carl E. Douglas, Thomas E. Beck and John Fattahi.

According to Mr. Galipo's declaration, Mr. Galipo has 35 years of experience as a trial lawyer, during which time he has "handled numerous civil rights cases and [] obtained substantial settlements and jury verdicts on behalf of his clients." Doc. No. 130 at 9:25-26. He received the Defender of the Constitution Award from the Inland Empire Chamber of the Federal Bar Association in 2012, id. at 9:15-16, and was runner-up for CAALA's Trial Lawyer of the Year Award in 2018, id. 130 at 12:6-10, in addition to being elected to the American College of Trial Lawyers and admitted to the Inner Circle of Advocates in 2019. Id. at 12:10-20. Further, Mr. Galipo has 12 published opinions in civil rights cases and "argued numerous appellate cases before the Ninth Circuit Court of Appeals" in the past eight years. Doc. No. 130 at 13:4-6.

All six of the cases submitted in support of Mr. Galipo's request for a rate of $1,200 per hour are from the United States District Court for the Central District of California. In the first of these six cases, *McKibben v. McMahon* (which did not involve Mr. Galipo), the court found that the billing rates "in the forum" – specifically, the Eastern Division of the Central District of California – for civil rights attorneys with 26-49 years of experience were $887-$1,230 per hour, and approved an hourly rate of $875 for an attorneys with 30-32 years of experience, $715 for an attorney with 15 years of experience, $640 for an attorney with 13 years of experience, $600 for an attorney with 10 years of experience, $480 for an attorney with six years of experience, and

$390 for attorneys with four years of experience. 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019).

The other five cases cited by Plaintiffs as to Mr. Galipo's hourly rate involve fee awards for Mr. Galipo in the Central District. In *Ramirez et al. v. City of Oxnard, et al.*, the court awarded Mr. Galipo a rate of $900 per hour. Doc. No. 130-4 (Case No. CV-13-01615-MWF (ANx) (C.D. Cal. Sept. 17, 2015)), page 12 or 20. In *R.S., et al. v. City of Long Beach et al.*, *Sanchez, et al. v. County of San Bernardino*, and *Howard v. County of Riverside, et al.*, courts awarded Mr. Galipo a rate of $800 per hour. Doc. No. 130-5 (Case No. SACV11-536 AG (RNBx) (C.D. Cal. Jan. 31, 2014)), page 10 of 17; Doc. No. 130-6 (Case No. CV10-9384 MMM (OPx) (C.D. Cal. March 10, 2014)), page 36 of 46; Doc. No. 130-7 (Case No. EDCV 12-00700 VAP (OPx) (C.D. Cal. Aug. 27, 2014)), page 13 of 19. And in *Craig v. County of Orange*, the court awarded Mr. Galipo a rate of $1,000 per hour. Doc. No. 144-2 (Case No. SACV 17-00491-CJC (KESx) (C.D. Cal. Sept. 5, 2019)).

The five attorney declarations submitted in support of Mr. Galipo's requested hourly rate were originally submitted on Mr. Galipo's behalf in an action in the Central District captioned *Schroeder v. Parcher et al.*, Case No. 5:18-cv-00427-DMG-SP (C.D. Cal. 2018). Those declarations state, in pertinent part, that the hourly rate of $1,200 sought by Mr. Galipo here is: "consistent with the market rate for lawyers of comparable skill and experience in the Los Angeles community," Doc. No. 130-10 ¶ 6; "consistent with the rates [] being billed by equally talented and experienced attorneys in metropolitan Los Angeles and also consistent with the fee awards being made by judges in [the Los Angeles] legal community, Doc. No. 130-12, page 9 of 13; and "on par with average Los Angeles partner billing rates for comparable attorneys in commercial and bankruptcy litigation." Doc. No. 130-13 ¶ 12.

### *Mr. Valenzuela's Requested Rate of $650 per Hour*

Plaintiffs assert that "[w]ith 11 years of experience, Mr. Valenzuela's hourly rate of $650 per hour is within the range of billing rates for civil rights attorneys throughout California with comparable experience," again citing to the *McKibben* case. Doc. No. 130 at 13:22-28.

The record shows that courts awarded Mr. Valenzuela a rate of $350 per hour in the

*Ramirez* case (where Mr. Galipo was awarded a rate of $800 an hour) and in a case captioned *AMJ, et al. v. County of Los Angeles, et al.,* Doc. No. 131-2 (Case No. EDCV 15-1346-VAP (SPx) (C.D. Cal 2015)), page 7 of 9, and Mr. Valenzuela states that in 2016 the opposing party agreed to pay him a rate of $400 per hour in settling a civil rights action in the Central District. Doc. No. 131 ¶ 11. Further, Plaintiffs attach an attorney declaration indicating that the "average Los Angeles law firm billing rate for an associate in 2019" was $804 per hour, Doc. No. 130 at 13:26-28, and cite two cases from the Central District in which courts awarded attorneys with 6-7 years of experience an hourly rate of $400 per hour. Doc. No. 131 ¶ 26 (citing <u>Atkins v. Miller</u>, Case No. CV 01-01574 DDP (C.D. Cal. 2007) and <u>Lauderdale, et al. v. City of Long Beach, et al.</u>, Case No. CV 08-979 ABC (C.D. Cal. 2010)).

<i><u>Mr. Sincich's Requested Rate of $400 per Hour</u></i>

Mr. Sincich, the third member of Mr. Galipo's firm involved in this action, graduated from law school and was admitted to the California bar in 2018. Doc. No. 130 at 21:17-18; 22:6-7. While in law school, he was a recipient of several scholarships and participated with success in moot court activities. <u>Id.</u> at 21:17-24. He also served as a judicial extern in the Central District. Doc. No. 21:25-27. Mr. Sincich states that he requested a rate for $400 per hour in an attorneys' fees motion in *Schroeder*, a case (as noted above) in the Central District. Doc. No. 132 ¶ 4.

<i><u>Mr. Schmidt's Requested Rate of $585 per Hour</u></i>

Plaintiffs assert that "[f]ew members of the California bar can attest to the same level of experience with police excessive force cases as Mr. Schmidt," Doc. No. 130 at 18:4-6, and that his requested "rate of [$][5]85 per hour is within the range of billing rates for civil rights attorneys in California with comparable experience." <u>Id.</u> at 17:15-20.

Mr. Schmidt "has been practicing for 19 years throughout the State [] of California and the west coast," Doc. No. 130 at 17:15-16 and 17:25-28, and "often consults with Mr. Galipo" on excessive force cases." <u>Id.</u> at 18:26-19:1. In addition, Mr. Schmidt states that he was awarded a rate of $330 per hour for a discovery motion that took place in this forum in 2013. Doc. No. 133 ¶ 4. According to Plaintiffs, annual increases of 6.6% would bring that rate of to 485.00 per hour today and Mr. Schmidt's rate of $585 per hour is justified when factoring in the additional

experience he has gained in excessive force cases since 2013. Id.

*Mr. Eisinger's Requested Rate of $400 per Hour*

Plaintiffs argue that Mr. Eisinger's requested rate of $400 per billable hour is justified based on his 35 years as a practicing attorney for the federal government and more recently, in private practice. Doc. No. 134 ¶ 4. According to Mr. Eisinger, that rate is "in line with hourly rates charged by attorneys with equivalent experience, skill reputation, and expertise for comparable work." Id.

### ii. Defendants' Opposition

Defendants argue that Plaintiffs' counsel have "inflate[d] their hourly rates far beyond those permitted within the [] Fresno Division of the Eastern District" and that they have failed to meet "their burden in their moving papers" to justify the rates they seek. Doc. No. 142 at 1:7-10. Defendants further argue that hourly rates sought in Plaintiffs' motion for attorneys' fees would improperly result in a "windfall" to Plaintiffs' counsel, id. at 2:1-2, and that this case was not sufficiently "unique" to "even remotely warrant any sort of [lodestar] multiplier." Id. at 1:20-22. More specifically, Defendants concede that Mr. Galipo is "an experienced trial attorney" but contend that his request for an hourly rate of $1,200/hour is improper because it is "three times that ever approved in the Fresno Division" and far in excess of rates awarded to Mr. Galipo by courts in the Central District. Doc. No. 142 at 2:4-8.

Defendants argue that Mr. Galipo's rate should be predicated on this Court's findings as to reasonable rates in this forums in *Avila v. Cold Springs Granite*, 2018 WL 400315 (E.D. Cal. Jan. 12, 2018), and that even allowing "for an extraordinary ten percent increase between 2018 and 2019, Mr. Galipo cannot possibly justify an hour rate in excess of $440/hour for work done in this Division." Doc. No. 142 at 2:18-25.

Similarly, Defendants contend that Mr. Valenzuela's requested rate of $650 per hour is too high because it is almost double the court-ordered rate of $350 per hour that Mr. Valenzuela received in the Central District in 2016 and because Mr. Valenzuela neither examined a witness nor made argument directly to the Court at trial in this case. Doc. No. 142:3:1-10. Defendants state that, in *Avila*, this Court found that an associate admitted to the bar the same years as Mr.

Valenzuela could charge no more than $350 per hour, id. at 3:10-11; see Doc. No. 130 at 14:14-17, and argue that, even allowing for a generous ten percent increase to the *Avila* rates, Mr. Valenzuela cannot justify a rate in excess of $385/hour here. Doc. No. 142 at 3:10-13.

As to the remaining attorneys, Defendants argue that Mr. Schmidt, who has practiced law for 19 years, should receive an hourly rate of $400 per hour "based almost entirely on his years in practice," Doc. No. 142 at 3:24-28; that Mr. Sincich, who was not admitted to the California bar until 2017, "could not possibly receive an hourly rate above the $150/hour approved by this Court" for a new lawyer in *Avila*, id. at 4:2-12; and that, given his minimal, associate-level role in this case and his extended period on inactive status with the California bar, Mr. Eisinger should be receive an hourly rate of no more than $150 per hour. Id. at 4:14-21.

### iii. Plaintiffs' Reply

Plaintiffs argue on reply that "the Court is not limited in its analysis to only the hourly rates given to other Fresno attorneys in determining the reasonable hourly rate for Plaintiffs' counsel," Doc. No. 144 at 7:5-10, and that under *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), the Court may also consider, in setting hourly rates, factors such as "the novelty and difficulty of the issues involved in [the] case" and "the skill required to litigate those issues …." Id. at 7:10-21. Similarly, Plaintiffs contend that the Court "can also take into consideration the excellent results that Plaintiffs' counsel obtained in considering the reasonableness of the requested hourly rates." Id. at 7:21-27.

Further, Plaintiffs argue that "it is appropriate to rely on rates outside the local forum where 'local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.' " Doc. No. 144 at 8:9-15 (quoting Barjon, 132 F.3d at 500). According to Plaintiffs, "it is highly doubtful that [] there was a local Fresno attorney – or elsewhere for that matter – with the degree of experience, expertise or specialization in police excessive force cases required to properly handle this difficult case." Id. at 8:15-18.

Finally, Plaintiffs take the position that "in the event that the Court finds that the hourly rate should be set based on the prevailing Fresno rates, than [sic] Plaintiffs' counsel should be

entitled to an upward adjustment of the lodestar figure" under *Kerr*, due to the "time and labor required" for this case, "the difficulty of the questions involved, [and] the requisite skill to perform the legal services properly." Doc. No 144 at 9:8-23.

   **B.  Analysis**

   As set forth below, Plaintiffs fail to show that the rates requested for their attorneys are in line with prevailing rates in this forum or that rates from outside the forum should apply. The Court will therefore set rates for Plaintiffs' attorneys based on rates approved for the Fresno Division of the Eastern District in *Avila*.

   **i.  Showing That Requested Rates Are in Line with Local Forum**

   As set forth above, "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," <u>Blum</u>, 465 U.S. at 895-96 n.11, and "the relevant community is the forum in which the district court sits." <u>Gonzalez</u>, 729 F.3d at 1205. Thus, "[w]hen a case is filed in the Fresno Division of the Eastern District of California, the hourly rate is compared against attorneys practicing in the Fresno Division of the Eastern District of California." <u>See</u> <u>J&J Sports Prods., Inc.</u>, 2018 WL 2155710, at *1 (citing <u>Munoz v. Giumarra Vineyards Corp.</u>, 2017 WL 2665075, * 17 (E.D. Cal. June 21, 2017); <u>Nadarajah v. Holder</u>, 569 F.3d 906, 917 (9th Cir. 2009)).

   With respect to Mr. Galipo's requested hourly rate of $1,200, Plaintiffs cite an order from a court in the Central District purporting to establish the range of hourly rates for top civil rights attorneys in the Los Angeles legal market, Doc. No. 130 at 8:21-27; various orders from the Central District granting Mr. Galipo hourly rates ranging from $800 to $1,000 per hour; and declarations from civil rights attorneys stating that the rate of $1,200 per hour sought by Mr. Galipo in yet another Central District case was in line with prevailing rates for civil rights attorneys of Mr. Galipo's caliber in Los Angeles. Doc. No. 131 ¶¶ 5-9, 39. Mr. Valenzuela's requested rate of $650 per hour, similarly, is based on two orders granting him a rate of $350 per hour in the Central District; Mr. Valenzuela's statement that the opposing party agreed to pay him a rate of $400 in another Central District case; two Central District cases approving a rate of $400

per hour for attorneys six and seven years out of law school; and an attorney declaration stating that the "average Los Angeles law firm billing rate for an associate in 2019" was $804 per hour. Id. ¶ 11; Doc. No. 130 at 13:26-28. Finally, Mr. Sincich's requested rate of $400 per hour is based entirely on a request he made for a rate of $400 per hour in a Central District case where no fee award has yet been issued. Doc. No. 132 ¶ 4.

"As this court has previously held, case comparisons and evidentiary support citing prevailing rates the Northern District, Central District, Southern District and anywhere else outside the Eastern District—Fresno Division are irrelevant to the determination of prevailing rates" in this forum. Luna v. Hoa Trung Vo, 2011 WL 2078004, at *4 (E.D. Cal. May 25, 2011) (citation and internal quotation marks omitted); see also, Johnson v. Allied Trailer Supply, 2014 WL 1334006, at *4–5 (E.D. Cal. Apr. 3, 2014) ("Comparisons to cases citing prevailing hourly rates in the Central District and Southern District are only marginally relevant to the determination of prevailing rates in the Eastern District …."); Jadwin v. County of Kern, 767 F. Supp. 2d 1069, 1125 (E.D. Cal. 2011) (holding that Fresno division, not Sacramento division, was relevant legal community to be used in selecting appropriate hourly rates). Inasmuch as the evidence relied on by Plaintiffs comes entirely from the Central District, Plaintiffs have plainly failed to show that the rates requested for its Los Angeles attorneys – Mssrs. Galipo, Valenzuela and Sincich – are in line with prevailing rates in this forum. Further, the Court notes that the rates sought here are significantly higher than the rates actually awarded to these attorneys in the Central District, making the irrelevant evidence on which Plaintiffs rely in proposing rates for its Los Angeles attorneys all the more useless to the Court.

As to the Fresno attorneys, Mr. Schmidt's rate request is loosely based on a fee award that he received in this forum in 2013, but Plaintiffs make no attempt to tie the generous upward adjustments required to get from the rate of $385 per hour Mr. Schmidt received in that case to the rate of $585 per hour that he is seeking here – which include annual rate increases of 6.6% over a period of several years plus an "experience" bonus of $100 per hour – to actual rates in the Fresno legal market. And the rate request for Mr. Eisinger contains no reference to any market rates, let alone rates in Fresno for an attorney who, like Mr. Eisinger, has returned to law practice as an

associate in the private sector after what appears to be an extended period of government work and several years on inactive status with the California bar. Thus, the Court also finds that Plaintiffs have failed to show that the rates sought for Mr. Schmidt and Mr. Eisinger are in line with prevailing rates in this forum. See Blum, 465 U.S. at 895-96 n.11.

### ii. Exemption from "Local Forum Rule"

Plaintiffs similarly fail to show that prevailing rates in the Fresno Division of the Eastern District do not apply here. Plaintiffs argue that Fresno rates should not apply because Mr. Galipo "is considered the very best trial attorney in the nation when it comes to police excessive force cases" and "it is very unlikely that there was a local attorney that could have obtained a similar result" in this case. Doc. No. 144 at 2:25-27. Even assuming that is true, however, exemption from the "local forum rule" requires a showing not merely that the fee applicant's counsel is superior to local counsel, but that "local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." Gates, 987 F.2d at 1405. Plaintiffs' mere assertions that "it is unlikely that there were any attorneys who were available in the Fresno area (or any other area for that matter) with the skill, experience and reputation comparable to that of Mr. Galipo" and that "[d]efense counsel would be hard-pressed to find another attorney, let alone a local Fresno attorney, with comparable skill and experience to that of Mr. Galipo," Doc. No. 144 at 2:13-19, do not even address – let alone satisfy – this well-settled standard.

Moreover, Plaintiffs make no attempt to show why an exemption from the "local forum rule" based on Mr. Galipo's personal accomplishments as a civil rights attorney should apply to the four other attorneys in question. And, while the attorneys on both sides of this case were most capable, the Court cannot agree with Plaintiffs' assertion that this case – which culminated in a short trial involving standard excessive force claims – was beyond the ken of the Fresno plaintiffs' bar or with Plaintiffs' assertion that a local attorney could not have achieved a similar result. Indeed, the Court notes that most of Plaintiffs' original claims (including, for example, the *Monell* claim and the claims on behalf of Verduzco and Lindsey) wound up on the "cutting room floor" and that, in addition to finding that Casillas himself was 40% negligent, the jury found in

Defendants' favor on the question of whether Shipman acted with "reckless disregard" for Casillas's rights under the Fourth Amendment.

The Court therefore finds that Plaintiffs have failed to show that rates from a forum other than the Fresno Division of the Eastern District should apply here. See J&J Sports Prods., Inc., 2018 WL 2155710, at *1.

### iii. Prevailing Rates in the Fresno Division of the Eastern District

As Plaintiffs have not provided the Court with apposite information regarding the prevailing market rates for similar work performed by comparable attorneys in Fresno, the Court agrees with Defendants that it is appropriate to apply the rates approved by this Court in *Avila*. See Allied Trailer Supply, 2014 WL 1334006, at *4–5.

In *Avila*, this Court found that "[i]n the Fresno Division of the Eastern District, the hourly rate for competent and experienced attorneys is between $250 and $400, 'with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience.' " 2018 WL 400315, at *10 (quoting Silvester v. Harris, 2014 WL 7239371, *4 (E.D. Cal. Dec. 17, 2014) and citing other cases); see also, J&J Sports Prods., Inc., 2018 WL 2155710, at *1 (finding that "[i]n the Fresno Division of the Eastern District, the hourly rate for competent and experienced attorneys is between $250 and $400" and that "$150 per hour is the established rate for associate attorneys" (citations and internal quotation marks omitted)). Further, this Court approved a rate of $400 per hour for attorneys with 27 to 41 years of experience; a rate of $350 per hour for an attorney with 9 years of experience; a rate of $250 per hour for an attorney with 5 years of experience; and a rate of $150 per hour for an attorney with 1 year of experience. Avila, 2018 WL 400315, at *11–12.

Defendants allow for the possibility of applying a 10% upward adjustment to the *Avila* rates to account for the passage of time, but the Court sees little, if any, justification for doing so here. The *Avila* order is recent. Plaintiffs have set forth no evidence that rates have increased in this forum over the past two years – let alone evidence as to the amount of such increases. See Luna, 2011 WL 2078004, at *4 n.2 (declining to make upward adjustment to historic rate where plaintiff "ha[d] not provided any information to indicate that inflation ha[d] had much of an

influence on rates"). And rates very similar to those approved by this Court in *Avila* have been applied in this forum as recently as last fall. See Freshko Produce Servs., Inc. v. Write On Mktg., Inc., 2019 WL 3798491, at *2-*3 (E.D. Cal. Aug. 13, 2019), report and recommendation adopted, 2019 WL 5390563 (E.D. Cal. Oct. 22, 2019) (finding that "[i]n the Fresno Division of the Eastern District of California, attorneys with twenty or more years of experience are awarded $350.00 to $400.00 per hour," that "$300 is the upper range for competent attorneys with approximately a decade of experience," and that the accepted range for attorneys with less than ten years of experience "is between $175 and $300 per hour," while approving a rate of $350 per hour for an attorney with approximately 27 years of experience and a rate of $175 per hour for an attorney with "approximately four years of experience"); see also Self v. FCA US LLC, 2019 WL 1994459, at *6 (E.D. Cal. May 6, 2019) (allowing rate of $225 per hour for counsel who began practicing law in 2012 and a rate of $175 per hour for attorneys who began practicing law in 2016 and 2018); Hall v. FCA US LLC, 2018 WL 2298431, at *7 (E.D. Cal. May 21, 2018) (allowing rate of $225 per hour for attorneys who began practicing law between 2011 and 2013); Garcia v. FCA US LLC, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (approving rate of $175 per hour for attorneys who had been in practice "for less than five years").

Mr. Galipo and Mr. Schmidt are accomplished and reputable attorneys with many of years of experience in civil rights cases and other types of litigation requiring competent trial work. Thus, the Court will approve a rate of $400 per hour for each of them, at the top of the scale applied in *Avila*. As to Mr. Valenzuela, a capable attorney with 7 years of experience at the time this case went to trial, the Court will approve a rate of $300 per hour, which falls midway between the rate of $350 per hour for an attorney with 9 years of experience and the rate of $250 per hour for an attorney with 5 years of experience that this Court approved in *Avila*. As to Mr. Sincich, who had only been practicing law for one year at the time this action was tried, the Court will approve a rate of $150 per hour, again in keeping with the rate approved for an associate with one year of experience in *Avila*. Mr. Eisinger was admitted to the bar in 1983, but has been in private practice for a short time and was in an associate-type role on this case. Analogizing Mr. Eisinger to a 5th-year attorney (for the limited purposes of this case), the Court finds that a rate of $250 per

hour is appropriate for Mr. Eisinger.

The approved rates for each of Plaintiffs' attorneys in this action are summarized in the

| ATTORNEY | REQUESTED HOURLY RATE | APPROVED HOURLY RATE |
|---|---|---|
| Dale Galipo | $1,200 | $400 |
| Eric Valenzuela | $650 | $300 |
| Martin Sincich | $400 | $150 |
| William Schmidt | $585 | $400 |
| Jeffrey Eisinger | $400 | $250 |

following table:

The Court will now address the number of hours billed.

## II.     <u>Number of Hours Billed</u>

### A.  **Parties' Arguments**

Plaintiffs argue that they are entitled to "fully compensatory fees" in this action even though several of their claims were dismissed pre-trial – including claims brought for property damage and emotional distress on behalf of Verduzco and Lindsey – because they achieved "excellent results" in this litigation. Doc. No. 130 at 5:23-26.

Plaintiffs further argue that the total number of hours claimed for the case – ranging from a low of 47.2 hours for Mr. Sincich to a high of 547 hours for Mr. Valenzuela for a total of 1,558.1 hours for all five of Plaintiffs' attorneys – is reasonable because "churning" is "highly atypical" in contingency cases involving civil rights claims and because the "winning lawyer's professional judgment as to how much time he was required to spend on the case" is entitled to deference. Doc. No. 130, Part II.K. Plaintiffs also provide an inventory of the work done on the case – ranging from depositions and written discovery on the front end and trial and post-trial motions on the back end – and state that Plaintiffs' counsel "efficiently and effectively worked together to eliminate the duplication." <u>Id.</u> Finally, Plaintiffs seek a right to additional attorneys' fees – in excess of those requested in Plaintiffs' opening papers – "for their time spent establishing their right to attorneys' fees in the amount requested." <u>Id.</u>

Defendants, for their part, contend that the billing records provided in connection with Plaintiffs' opening brief "reflect multiple examples of duplicative billing and hours which never could have been justified if billed directly to a private client" and specifically seek reductions as to eight bodies of work: (i) the complaint; (ii) learning time for Mr. Schmidt; (iii) file review; (iv) Shipman's deposition; (v) prosecution of claims on behalf of Verduzco and Lindsey; (vi) the summary judgment opposition; (vii) trial preparation; and (viii) trial. Doc. No. 142 at 5:7-9.

**B. Analysis**

Counsel for the party seeking fees "bears the burden of submitting detailed time records justifying the hours claimed to have been expended." Chalmers, 796 F.2d at 1210. A fee applicant "is not required to record in great detail how each minute of [his] time was expended," but "[he must] list[ ] [the] hours and identify[ ] the general subject matter of [the] time expenditures." Gucci Am., Inc. v. Pieta, 2006 WL 4725707, at *2 (C.D. Cal. July 17, 2006) (internal quotation marks omitted). Further, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley, 461 U.S. at 434.

"By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case …." Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008). To calculate how many hours to compensate, courts consider whether, in light of the circumstances, the time could reasonably have been billed to a private client. Id. After reviewing the records, the court may adjust the hours downward if it believes the documentation to be inadequate, if it finds that the hours are duplicative, or if it finds that the hours are excessive or unnecessary. J&J Sports Prods., Inc., 2018 WL 2155710, at *1-*2.

The Court considers, in turn, the time billed for each of the eight bodies of work addressed in Defendants' opposition, as well as Plaintiffs' request for fees relating to this motion.

**i. The Complaint and First Amended Complaint**

Defendants argue that drafting "a simple 14 page complaint" should take no more than 2-3 hours, and that Mr. Schmidt's time on the complaint should therefore be reduced by 28.1 hours.

Doc. No. 142, Part 3.A. Similarly, Defendants argue that a reduction of 9.3 hours to the 11.3 hours Mssrs. Schmidt and Eisinger billed for the 1AC is warranted because the 1AC "entailed little more than adding three simple paragraphs to the original complaint." Id.

Defendants' assertion that Mr. Schmidt spent 31.1 hours drafting "a simple 14 page complaint" is somewhat misleading. In truth, Mr. Schmidt's billing records show that much of that time was spent on factual and legal research relating to possible claims. See e.g., Doc. No. 133-1, p. 2 of 9 (entries for 7/6/2016, 7/16/2016 and 7/17/2016). Still, given the great deal of experience Mr. Schmidt purportedly has with police excessive force cases, see Doc. No. 130 at 18:4-6 (stating that "[f]ew members of the California bar can attest to the same level of experience with police excessive force cases as Mr. Schmidt"), the time billed for such research strikes the Court as more than what could be billed to a private client. Further, given the brevity of the Complaint and Mr. Schmidt's experience, the Court does not see justification for the full 12.7 hours billed for Mr. Schmidt's "jurisdiction and venue" analysis and drafting, editing and finalizing the Complaint. The Court will therefore reduce the time Mr. Schmidt may bill for the Complaint by 10 hours to a total of 21.1 hours.

Similarly, given the minimal changes that were made, the Court agrees with Defendants that the 11.3 hours Mr. Schmidt and Mr. Eisinger billed for the 1AC is excessive. 5 hours appears to be more than sufficient for the work performed. The Court, however, has only identified 10.1 hours-worth of entries relating to the 1AC – 1.5 hours in the billing records for Mr. Schmidt and 8.6 hours in the billing records for Mr. Eisinger.[2] Therefore, the Court will reduce Mr. Schmidt's billing by .5 hours and will reduce Mr. Eisinger's billing by 4.6 hours in connection with the 1AC.

### ii. Mr. Schmidt's "Learning Time"

Defendants ask the Court to strike 66 hours billed by Mr. Schmidt for "researching various articles and resources pertaining to police practices" and 6.1 hours Mr. Schmidt billed for "attending unrelated court appearances by defense counsel." Doc. No. 142, Part 3.A.-B. According

---

[2] The Court notes that Plaintiffs generally do not dispute Defendants' assertions as to the number of hours billed in connection with the bodies of work at issue in this motion. The Court, therefore, credits Defendants' assertions for purposes of this motion except where the Court has identified, through its review, an apparent disparity between those assertions and the entries in billing records furnished by Plaintiffs' counsel.

to Defendants, the time an attorney spends "learning how to handle a particular type of case" and sizing up the competition cannot properly be billed to a client or recovered as attorneys' fees. Id.

Defendants do not tie the 66 research hours at issue directly to specific time entries, but Plaintiffs do not dispute Defendants' tabulation and, while the research Mr. Schmidt conducted appears to be relevant to this case, see Doc. No. 133-1, p. 2 of 9, the Court agrees with Defendants that more than a week and a half of backgrounding exceeds what a private client would expect from an attorney with Mr. Schmidt's professed level of expertise with respect to police excessive force cases. The Court will allow for three conventional work days of backgrounding and reduce the time billed for this body of work from 66 hours to 24 hours, for a reduction of 42 hours in the lodestar calculation.

The Court also agrees with Defendants as to time spent scoping out opposing counsel, but again, Defendants have failed to tie the 6.1-hour figure set forth in their papers to the billing records. Within the limited time the Court was willing to allocate to the task of matching Defendants' brief to Plaintiffs' billing records, the Court identified a single entry – for 4 hours on November 15, 2017 – that falls into this "scouting" category. The Court will accordingly deduct 4 hours from Mr. Schmidt's billed hours in calculating the lodestar fee.

### iii.  Initial Review of File Materials

Defendants acknowledge the need for "an initial review of file materials" but contend that the 122.2 hours billed for the initial file review in this case (averaging 30 hours per attorney) is excessive because it involved serial review of the same file by four different attorneys and "does not include subsequent time reviewing the file in preparation for depositions, various motion[s] or trial." Doc. No. 142 at 6:11-28. Defendants ask the Court to strike completely the 10.5 hours Mr. Sincich spent on initial file review, while reducing Mr. Valenzuela's hours and Mr. Galipo's hours by 5.3 hours and 18.7 hours respectively. Id. at 7:3-7.

The Court has no reasonable way of ascertaining whether Plaintiffs' counsels' review was excessive, however, because Defendants set forth no useful information as to the volume, density or form of the materials in the file and make no effort to tie their argument to specific entries in the billing records for the four attorneys putatively involved in the "initial file review." See Ruff v.

Cty. of Kings, 700 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010) ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." (citations omitted)). Under the circumstances, the Court will defer to Plaintiffs' counsels' determinations as to the amount of review required and will not deduct any hours for "initial file review" in performing the lodestar calculation.

### iv. Shipman Deposition

As to the Shipman Deposition, Defendants acknowledge that Shipman was a key figure in this case but contend that billing 22 hours in preparation time for a 2.5-hour deposition is excessive. Doc. No. 142, Part 3.D. On that score, Defendants contend that Mr. Galipo should not be permitted to bill anymore than 2.5 hours in preparation time for the Shipman Deposition – an amount equivalent to the amount billed by Mr. Valenzuela for the same deposition. Id. Further, Defendants contend that there was no reason for Mr. Schmidt to attend "as a third attorney" and that the Court should strike completely the 2.6 hours Mr. Schmidt billed for attending the Shipman Deposition. Doc. No. 142 at 7:23-27.

The Court agrees with Defendants that, no matter how important a witness is, 22 hours of preparation for a 2.5 hour deposition would be hard to justify to a private client, particularly given the large number of hours charged for the initial file review. The Court will, therefore, reduce Mr. Galipo's preparation time to 16 hours – two conventional work days. Further, the Court sees no valid basis for billing for Mr. Schmidt to attend the Shipman Deposition as a third – passive – attorney, particularly given his limited role in the case after associating Mssrs. Galipo and Valenzuela as counsel. The Court will therefore strike the 2.6 hours Mr. Schmidt billed for the Shipman Declaration from the lodestar calculation.

### v. Claims on Behalf of Verduzco and Lindsey

Defendants contend that all time "spent evaluating and pursuing" claims on behalf of Verduzco and Lindsey – as owners of the property at which the shooting at issue in this case transpired – should be cut because those claims "were voluntarily dismissed with prejudice" after Plaintiffs' counsel acknowledged they "had no merit." Doc. No. 142 at 8:1-8. This would result in

cutting Mr. Eisinger's time by 8.5 hours and Mr. Schmidt's time by 13.8 hours. Id. at 8:7-8.

The first step in deciding whether to exclude hours expended on unsuccessful claims from the lodestar calculation "requires the district court to determine whether the successful and unsuccessful claims were unrelated ..." Ruff, 700 F. Supp. 2d at 1228–29 (citation and internal quotation marks omitted). "[C]laims are *unrelated* if the successful and unsuccessful claims are 'distinctly different' *both* legally *and* factually …." Id. at 1229 (citation and internal quotation marks omitted) (emphasis original).

The unsuccessful claims at issue here were voluntarily dismissed by Plaintiffs with prejudice prior to Defendants' motion for summary judgment and involved different plaintiffs, different facts and different harms than the claims on which Plaintiffs ultimately prevailed at trial. For example, whereas the claims on which Plaintiffs prevailed at trial focused narrowly on Shipman's encounter with Casillas, the Verduzco and Lindsey claims concern the condition of property owned by Verduzco and Lindsey and emotional distress Verduzco and Lindsey purportedly experienced in connection the entrance of officers on their property and other events relating to the shooting. See Doc. No. 5 ¶¶ 45-51.

Inasmuch as they involve different facts, legal theories and parties, the Court finds that the Verduzco and Lindsey claims are "distinctly different" from the claims on which Plaintiffs prevailed for purposes of the fee analysis in this case and will deduct the 8.5 hours Mr. Eisinger billed for the Verduzco and Lindsey claims and the 13.8 hours Mr. Schmidt billed for the Verduzco and Lindsey claims from the fee award.

**vi.  Opposition to Defendants' Motion for Summary Judgment**

Defendants billed a total of 36.1 hours to prepare their motion for summary judgment in this case and contend "it is unimaginable that it could possibly take four Plaintiffs' attorneys almost five times as long for a total of 173.8 hours to file a single opposition." Doc. No. 142 at 8:10-17. Noting that the court in *Ramirez v. Oxnard* (one of the cases Plaintiffs cite to justify their hourly rates) ordered a 64% reduction in thes time Mr. Galipo and his team billed for an opposition, Defendants seek reductions of 23.9 hours and 63.4 hours for Mr. Galipo and Mr. Valenzuela respectively. Id. at 8:10-21. Further, Defendants argue that the "24.2 hours billed by

first year attorney Sincich must be eliminated entirely" as training time and that the 13.2 hours billed by Mr. Schmidt should also be cut in their entirety because Mr. Schmidt "filed no papers with respect to the MSJ." Id. at 8:21-24.

The time spent opposing Defendants' motion for summary judgment was warranted, Plaintiffs argue, because the motion for summary judgment raised "complex legal issues" that "required significant amounts of time to research," particularly given the number of witnesses involved. Doc. No. 144 at 14:11-17.

The 173.8 hours billed by Plaintiffs represents more than a full conventional month of billing. This strikes the Court as excessive and as more than attorneys could bill a private client for work of this nature. The opposition was, indeed, robust, but the issues were well within the scope of what one would expect to see an excessive force case and Mr. Galipo and his team repeatedly assert in their papers that they are among the most experienced and capable attorneys in the field. Moreover, the Court has permitted generous billing in connection with factual and legal research at the front end of the case. The Court believes it could be appropriate to bill three conventional 40-hour weeks for the opposition and will therefore reduce the billing for the opposition by 30% as to all four of the attorneys who billed time for this task.

Mr. Galipo's time will therefore be reduced by 11.2 hours, Mr. Valenzuela's time will be reduced by 29.7 hours, Mr. Sincich's time will be reduced by 7.26 hours and Mr. Schmidt's time will be reduced by 3.96 hours in connection with Plaintiffs' opposition to the motion for summary judgment.

### vii.  Trial Preparation

Mr. Galipo's billing records include 11 entries totaling 133.4 hours that are identified only as "trial preparation." Defendants contend that this should be reduced by 20% based on reductions to Mr. Galipo's "trial preparation" entries in *Sanchez v.County of San Bernardino* – one of the cases Plaintiffs' cite to support Plaintffs' counsels' requested hourly rates. Doc. No. 142, Part 3.G.

The amount of time Mr. Galipo billed for trial preparation does not strike the Court as excessive, particularly in light of how well Mr. Galipo and his team performed at trial.  The Court therefore defers to Mr. Galipo's determination as to how much trial preparation time was

warranted and denies Defendants' request for a haircut for block billing.

### viii. Trial

Defendants contend that billing 200.2 hours for three attorneys at a four-day trial is excessive. They argue that Mr. Valenzuela's time should be reduced by 8.6 hours, to match the 64.8 hours billed by Mr. Galipo, and that the 62 hours billed by Mr. Schmidt should be struck entirely because "Plaintiffs have submitted no evidence to meet their burden or proving that he did anything other than watch and learn from Mr. Galipo and conduct some non-billable clerical work of arranging witness appearances." Doc. No. 142 at 9:20-10:2.

It is not unusual for associates to work more hours than partners, so the Court will deny Defendants' request to reduce Mr. Valenzuela's hours to match the number of hours Mr. Galipo billed for trial. The Court agrees, however, that given his limited role at trial, the 62 hours Mr. Schmidt billed for trial is excessive. Mr. Schmidt's billing entries during the four days of trial (excluding the day and half for jury deliberations) essentially refer to "meet[ing] with counsel in the AM," "evening debrief" and "prep for next day." Doc. No. 133-1, page 8 of 9 through page 9 of 9. There is minimal reference to what Mr. Schmidt did while trial was actually in progress, so the Court will deduct 6 hour a day for four days (February 26, 2019 through March 1, 2019) on that ground. Further, the Court sees no reason why three separate attorneys should be billing time during jury deliberations. The Court will therefore strike Mr. Schmidt's time for March 5, 2019 and March 6, 2019 completely. See Doc. No. 133-1, page 9 of 9. Thus, Mr. Schmidt's trial billings will be reduced by a total of 35.2 hours.

### ix. Motion for Attorneys' Fees

Mr. Valenzuela billed 6.5 hours and Mr. Galipo billed 2.5 hours in connection with preparing the instant motion for attorney fees, reviewing the opposition and preparing the reply. Doc. No. 144 at 5:17-25. The law permits an award of attorneys' fees for the time attorneys spend establishing the right to attorneys' fees. Clark v. City of Los Angeles, 803 F.2d 987, 992 (9th Cir. 1986). Plaintiffs' outlandish attorneys' rate requests and complete failure to give serious consideration to the correct standard for setting rates in the Fresno Division of the Eastern District of California, however, rendered Plaintiffs' briefing more of an imposition than help to the Court.

The Court, therefore, declines to include in the lodestar calculation hours expended by Plaintiffs'
counsel in connection with the motion for attorneys' fees.

### C. Conclusion as to Number of Hours Billed

Pursuant to the foregoing analysis, the hours allowed for Plaintiffs' attorneys in this case
are as follows:

| ATTORNEY | REQUESTED HOURS | REDUCTIONS | APPROVED HOURS |
|---|---|---|---|
| Mr. Galipo | 407 | 17.2 | 389.8 |
| Mr. Valenzuela | 547 | 29.7 | 517.3 |
| Mr. Sincich | 47.2 | 7.26 | 39.94 |
| Mr. Schmidt | 482 | 112.06 | 369.94 |
| Mr. Eisinger | 74.9 | 13.1 | 61.8 |

## III.  Lodestar Calculation

Pursuant to the foregoing analysis, the Court calculates a total lodestar fee of $480,527 in
this action as follows:

| ATTORNEY | APPROVED RATE | APPROVED HOURS | APPROVED FEE |
|---|---|---|---|
| Mr. Galipo | $400 / hour | 389.8 | $155,920 |
| Mr. Valenzuela | $300 / hour | 517.3 | $155,190 |
| Mr. Sincich | $150 / hour | 39.94 | $5,991 |
| Mr. Schmidt | $400 / hour | 369.94 | $147,976 |
| Mr. Eisinger | $250 / hour | 61.8 | $15,450 |
| | | **TOTAL** | $480,527 |

## IV.  Adjustments to the Lodestar Fee

"After the lodestar is determined, the court may make adjustments, depending on the
circumstances of the case," but "there is a strong presumption" that the lodestar is a "reasonable
fee." United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 406 (9th Cir. 1990).

Defendants argue that the Court should require Plaintiffs' counsel to disclose the terms of
their contingency agreement in this case and adjust the lodestar fee downward to reflect payments
under said agreement. Doc. No. 142, Part 4. Defendants, however, provide no authority for
adjusting lodestar fees downward to account for contingency agreements. Id. at 10:24-27. The

Court therefore declines to make a downward adjustment to the lodestar figure.

Plaintiffs, for their part, assert that the lodestar fee should be adjusted upward to reflect *Kerr* factors such as the challenging nature of this case, the degree of Plaintiffs' success and the qualifications, skill and expertise of Plaintiffs' counsel. Doc. No. 130 at 24:20-25:4; Doc. No. 144 at 4:5-7. To the extent they apply here, however, such factors are already subsumed into the lodestar analysis. See United Steelworkers, 896 F.2d at 406 n.3; see also, Blum, 465 U.S. at 898–900 ("the novelty and complexity of the issues," "the special skill and experience of counsel," the "quality of the representation," and the "results obtained" are subsumed within the lodestar). Moreover, the Court does not find that the fee generated here through the lodestar calculation is unreasonable. See Van Gerwen, 214 F.3d at 1045. The Court therefore finds that this is not one of those "exceptional" and "rare" instances in which an upward adjustment to the lodestar fee is warranted. Id.

**V.      Conclusion**

For the foregoing reasons, the Court calculates a lodestar fee of $480,527 and awards that amount as attorneys' fees to Plaintiffs.

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiffs' motion for attorneys' fees is GRANTED in part and with modifications in the amount of $480,527.

IT IS SO ORDERED.

Dated:   February 21, 2020        _____

                                                    SENIOR  DISTRICT  JUDGE