# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF CASIMERO CASILLAS, et al., | Case No.  1:16-cv-01042-AWI-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING UNOPPOSED EX PARTE PETITIONS FOR COMPROMISE OF THE CLAIMS OF MINORS A.C., S.C., A.C, C.C. AND A.C. |
| v. | |
| CITY OF FRESNO, et al., | |
| Defendants. | (ECF Nos. 166, 167, 170, 171) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## INTRODUCTION

Currently before the Court is an unopposed ex parte petition for the compromise of the claims of minors A.C. 1, S.C., A.C. 2, and C.C., filed by their guardian ad litem Beatriz Catano ("Catano'), and an unopposed ex parte petition for the compromise of the claims of minor A.C. 3, filed by her guardian ad litem Cheryl Casillas ("Casillas").[1]  (ECF Nos. 166, 167, 170, 171.) The matter was referred to the undersigned for the issuance of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  No hearing was set on this matter by the petitioners.  The Court finds this matter suitable for decision without oral argument and no

---

[1] The Court identifies the minors by the numbering as used by the petitioners in some portions of their filings.  (See ECF No. 166 at 3-4; ECF No. 167 at 12.)

1

1    hearing shall be set.  <u>See</u> Local Rule 230(g).  The Court, having reviewed the unopposed original

2    petitions, the supplemental briefing, the amended petitions, and the Court's record, recommends

3    the unopposed ex parte petitions for compromise of the minors' claims, as amended, should be

4    granted.

## II.

## BACKGROUND

7          On September 17, 2015, officers of the Fresno Police Department attempted to pull over

8    a vehicle driven by Casimero Casillas ("Decedent").  (Compl., ¶ 12, ECF No. 1.)  The Decedent

9    did not stop his vehicle but drove to the residence of his friends with the officers following with

10   lights flashing and sirens blaring.  (<u>Id.</u>, ¶ 12.)  Upon arriving at the residence, the Decedent

11   exited the vehicle and entered the home through the garage.  (<u>Id.</u>, ¶ 13.)  The officers entered the

12   home and Decedent was shot several times by Defendant Trevor Shipman.  (<u>Id.</u>)

13         On July 19, 2016, the Estate of Casimero Casillas, Cheryl Casillas, A.C. 3 by her

14   guardian ad litem Cheryl Casillas, Robert Verduzco, and Jamila Lindsey filed this civil rights

15   action pursuant to 42 U.S.C. § 1983 against the City of Fresno, the Fresno Police Department,

16   and Officer Trevor Shipman ("Defendants").  (ECF No. 1.)  On September 15, 2016, a first

17   amended complaint was filed by the Estate of Casimero Casillas, Cheryl Casillas, A.C. 3 by her

18   guardian ad litem Cheryl Casillas, C.C. by his guardian ad litem Beatriz Catano, S.C. by his

19   guardian ad litem Beatriz Catano, A.C. 1 by his guardian ad litem Beatriz Catano, A.C. 2 by his

20   guardian ad litem Beatriz Catano, Robert Verduzco, and Jamila Lindsey.  (ECF No. 5.)

21         On October 23, 2018, an order was filed granting in part Defendants' motion for

22   summary judgment.  (ECF No. 26.)  This matter proceeded on Plaintiffs' excessive force claim

23   under the Fourth and Fourteenth Amendment and state law claims of battery, wrongful death-

24   negligence, and interference with federal or state rights under the Bane Act.  (<u>Id.</u>)  By agreement

25   of the parties, the fifth and sixth causes of action were dismissed, which were the only claims

26   brought by Plaintiffs Robert Verduzco, and Jamila Lindsey.  (<u>Id.</u> at 15.)[2]

27   _____

28   [2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the
     CM/ECF electronic court docketing system.

On January 16, 2019, orders were issued appointing Cheryl Casillas as guardian ad litem for her minor daughter A.C. 3 and appointing Beatriz Catano as guardian ad litem for her minor children A.C. 1, A.C. 2, C.C. and S.C.  (ECF Nos. 42, 43.)

A six day jury trial commenced on February 26, 2019.  (ECF Nos. 75-83.)  At the close of deliberations, the jury returned a verdict for Plaintiffs on March 6, 2019.  (ECF No. 83.) Judgment was entered in favor of Plaintiffs on March 7, 2019.  (ECF No. 90.)  On July 3, 2019, Defendants' motion for a new trial and motion for a directed verdict was denied.  (ECF No. 129.) On July 19, 2019, Defendants filed a notice of appeal that was forwarded to the Court of Appeals for the Ninth Circuit.  (ECF Nos. 136, 137.)  The district court taxed costs against Defendants and a notice of appeal was filed on February 5, 2020.  (ECF Nos. 147, 148.)  Plaintiffs' motion for attorney fees was granted and Defendants filed a notice of appeal on February 24, 2020. (ECF Nos. 151, 152.)  Plaintiffs filed a notice of cross appeal on the order on the motion for attorney fees.  (ECF No. 155.)

On May 13, 2020, Defendants filed a motion to stay enforcement of the judgment and waive the requirement of posting a bond during the pendency of the appeals.  (ECF No. 160.) On June 5, 2020, the Ninth Circuit dismissed the cross-appeal.  (ECF No. 162.)  On July 7, 2020, an order issued granting Defendants' motion to stay enforcement of the judgment during the pendency of the appeal.  (ECF No. 165.)

On May 28, 2021, an ex parte petition for compromise of the claims of A.C. 1, S.C., A.C. 2 and C.C. and an ex parte petition for compromise of the claims of A.C. 3 were filed.  (ECF Nos. 166, 167.)  On July 6, 2021, the Court ordered Plaintiffs to file supplemental briefing: that provided information required under Local Rules that was not included in the original petitions; that provided the Court information pertaining to recovery in similar cases in sufficient detail for the Court to consider the fairness of the settlement; and that addressed the Court's concerns regarding the attorneys' fees requested in the original petitions.  (ECF No. 168.)  On July 20, 2021, Plaintiffs provided supplemental briefing.  (ECF No. 169.)  Additionally, on July 27, 2021, Plaintiffs filed amended petitions, which among other aspects, reduced the amount of attorneys' fees requested and increased the total amount of settlement funds that the minor Plaintiffs are to

1  receive.  (ECF Nos. 170, 171.)

2  ### III.

3  ### LEGAL STANDARD

4  "District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c),

5  to safeguard the interests of litigants who are minors."  Robidoux v. Rosengren, 638 F.3d 1177,

6  1181 (9th Cir. 2011).  "In the context of proposed settlements in suits involving minor plaintiffs,

7  this special duty requires a district court to 'conduct its own inquiry to determine whether the

8  settlement serves the best interests of the minor.' "  Robidoux, 638 F.3d at 1181 (quoting

9  Dacanay v. Mendoza, 573 F.2d 1075, 1080 (9th Cir. 1978)).

10  The Local Rules for this district provide that "[n]o claim by or against a minor . . . may

11  be settled or compromised absent an order by the Court approving the settlement or

12  compromise."  L.R. 202(b).  "In actions in which the minor . . . is represented by an appointed

13  representative pursuant to appropriate state law, excepting only those actions in which the United

14  States courts have exclusive jurisdiction, the settlement or compromise shall first be approved by

15  the state court having jurisdiction over the personal representative."  L.R. 202(b)(1).  In all other

16  actions, the motion for approval of a proposed settlement shall be filed pursuant to Local Rule

17  230, and must disclose, among other things, the following:

18  the age and sex of the minor or incompetent, the nature of the causes of action to
be settled or compromised, the facts and circumstances out of which the causes of
19  action arose, including the time, place and persons involved, the manner in which
the compromise amount or other consideration was determined, including such
20  additional information as may be required to enable the Court to determine the
fairness of the settlement or compromise, and, if a personal injury claim, the
21  nature and extent of the injury with sufficient particularity to inform the Court
whether the injury is temporary or permanent.  If reports of physicians or other
22  similar experts have been prepared, such reports shall be provided to the Court.
The Court may also require the filing of experts' reports when none have
23  previously been prepared or additional experts' reports if appropriate under the
circumstances.  Reports protected by an evidentiary privilege may be submitted in
24  a sealed condition to be reviewed only by the Court in camera, with notice of such
submission to all parties.

25

26  L.R. 202(b)(2).

27  "When the minor or incompetent is represented by an attorney, it shall be disclosed to the

28  Court by whom and the terms under which the attorney was employed; whether the attorney

4

became involved in the application at the instance of the party against whom the causes of action are asserted, directly or indirectly; whether the attorney stands in any relationship to that party; and whether the attorney has received or expects to receive any compensation, from whom, and the amount."   L.R. 202(c).   "Upon the hearing of the application, the representative compromising the claim on behalf of the minor or incompetent, and the minor or incompetent shall be in attendance unless, for good cause shown, the Court excuses their personal attendance." L.R. 202(d).

In Robidoux, the Ninth Circuit cautioned that the typical practice of applying state law and local rules governing the award of attorneys' fees "places undue emphasis on the amount of attorney's fees provided for in settlement, instead of focusing on the net recovery of the minor plaintiffs under the proposed agreement."   638 F.3d at 1181.   District courts should thus "limit the scope of their review to the question [of] whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases."   Id. at 1181-82.   "Most importantly, the district court should evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel— whose interests the district court has no special duty to safeguard."   Id.; but see A.G.A. v. Cty. of Riverside, No. EDCV1900077VAPSPX, 2019 WL 2871160, at *2 (C.D. Cal. Apr. 26, 2019) ("Some courts have read Robidoux to suggest it is improper to evaluate the reasonableness of attorneys' fees provisions in proposed settlement agreements of minors' claims . . . The Court declines to adopt this approach.").[3]

---

[3]  In A.G.A., the court noted the action had "a key distinguishing feature from the facts presented in Robidoux [where] the district court had denied in part the parties' motion to approve the proposed settlement, which included as a material term that plaintiffs' counsel would recover approximately 56% of the settlement amount as attorneys' fees . . . The Ninth Circuit found the district court abused its discretion in denying in part the motion based on the amount of attorneys' fees alone because it placed 'undue emphasis on the amount of attorneys' fees provided for in [the] settlement.'"  2019 WL 2871160, at *3 (quoting Robidoux, 638 F.3d at 1181).  The A.G.A. court found that in contrast, the attorneys' fees at issue were not a material term of the settlement agreement, there was no express provision for attorneys' fees, and in approving the settlement, the court thus only considered whether the net amount distributed to each plaintiff was fair and reasonable in light of the facts of the case, the minors' specific claims, and recover in similar cases, as required by Robidoux.  2019 WL 2871160, at *3.  The court found the "amount of attorneys' fees at issue here is an independent matter, the obligation arising from the retainer agreements between Plaintiffs and their counsel," and would evaluate the request in light of the special duty to safeguard the interests of the minor litigants, as well as the local rule requiring the court to fix the amount of attorneys' fees in an action

The holding of <u>Robidoux</u> was expressly "limited to cases involving the settlement of a minor's federal claims," and the Circuit did "not express a view on the proper approach for a federal court to use when sitting in diversity and approving the settlement of a minor's state law claims." 638 F.3d at 1179 n.2. Some district courts have extended the application to state law claims. <u>See</u> <u>Calderon v. United States</u>, No. 1:17-CV-00040-BAM, 2020 WL 3293066, at *3 (E.D. Cal. June 18, 2020) (noting that although <u>Robidoux</u> "expressly limited its holding to cases involving settlement of a minor's federal claims . . . district courts also have applied this rule in the context of a minor's state law claims.") (citations omitted); <u>A.G.A.</u>, 2019 WL 2871160, at *2 n.1 ("The Ninth Circuit did not express a view on the proper approach for a federal court to use when sitting in diversity and approving the settlement of a minor's state law claims . . . however, the Court has federal question jurisdiction and is exercising supplemental jurisdiction over Plaintiffs' state law claims . . . as the case 'involves' the settlement of Plaintiffs' federal claims, the Court applies the <u>Robidoux</u> standard to the entire settlement.").

## IV.

## DISCUSSION

Here, the Plaintiffs have brought both federal and state law claims, and the Court is exercising supplemental jurisdiction over the state law claims. Thus, the Court will apply the <u>Robidoux</u> standard when reviewing the settlement. <u>See</u> <u>A.G.A.</u>, 2019 WL 2871160, at *2 n.1; <u>Lobaton v. City of San Diego</u>, No. 15-CV-1416 GPC (DHB), 2017 WL 2298474, at *2 (S.D. Cal. May 26, 2017); <u>Est. of Sauceda v. City of N. Las Vegas</u>, No. 211CV02116GMNNJK, 2020 WL 1982288, at *3 (D. Nev. Apr. 15, 2020) ("The Ninth Circuit has made clear that its standards apply in federal question cases[,] . . . [m]oreover, district courts within the Ninth Circuit have concluded that federal law applies to the entirety of a request to approve a minor's settlement in cases in which the district court exercises federal question jurisdiction and supplemental jurisdiction over additional state law claims., <u>report and recommendation adopted,</u> No. 211CV02116GMNNJK, 2020 WL 2105017 (D. Nev. Apr. 30, 2020).

---

involving a minor. <u>Id.</u> The court applied California law to evaluate the request for attorneys' fees pursuant to the local rule, and in line with other district courts throughout California. <u>Id.</u> (citations omitted). The court reduced the attorneys' fees from 33% to 25% of the settlement fund. <u>Id.</u> at *4.

**A.  Procedural Sufficiency of the Petitions for Compromise of the Minors' Claims**

Upon review of the originally filed petitions, the supplemental briefing, the amended petitions, and documentation attached thereto, the Court finds the petitioners have sufficiently set forth the information required under Local Rule 202.  See Hughey v. Camacho, No. 2:13-CV-02665-TLN-AC, 2019 WL 1208987, at *3 (E.D. Cal. Mar. 14, 2019) ("Plaintiffs have met the procedural requirements of Local Rule 202(b)(2) . . . Plaintiffs have identified the Minor, G.H., as a six-year-old male; and have identified the claims to be settled in the pending action, all relevant background facts, and the manner in which the proposed settlement was determined.").

The minors that Catano is guardian ad litem for are identified as follows: A.C. 1 is a 9-year-old male; S.C. is a 14-year-old male; A.C. 2 is a 15-year-old male; and C.C. is a 16-year-old male.  (Amended Ex Parte Unopposed Petition for Compromise of the Claims of A.C. 1, S.C., A.C. 2, and C.C., Minors, Through Guardian Beatriz Catano (hereafter "Catano Am. Pet.") at 6, ECF No. 170.)  The natural parents of these four minors are Catano and the Decedent.  (Id.)  The minor that Casillas is guardian ad litem for is A.C. 3, an 8-year-old female, whose natural parents are Casillas and the Decedent.  (Amended Ex Parte Unopposed Petition for Compromise of the Claims of A.C. 3, a Minor, Through Guardian Cheryl Casillas (hereafter "Casillas Am. Pet.") at 6, ECF No. 171.)

The petitions set forth the relevant background facts as related to the manner in which the proposed settlement was determined, including the course of litigation leading to the verdict against the Defendants at trial, and the current posture of the appeal to the Ninth Circuit. Specifically, after a five (5) day jury trial and two (2) days of deliberations, the jury returned a verdict in favor of Plaintiffs in the amount of $4.75 million.  (Casillas Am. Pet. at 5, 7; Catano Am. Pet. at 5, 7.)  The jury found Defendant Shipman violated Decedent's Fourth Amendment rights by using unreasonable force against him, that Defendant Shipman was liable for the state law wrongful death claims of battery and negligence.  (Id.)  The Court also awarded $480,527 in statutory attorneys' fees and $10,400.47 in costs.  (Id.)  Defendants appealed the judgment against Officer Shipman and the City of Fresno to the Ninth Circuit Court of Appeals.  Both

1   sides completed their respective briefing on the appeal and the matter was set for oral argument

2   on May 5, 2021.   The parties recently reached a settlement agreement which obligates

3   Defendants to pay to the Plaintiffs and their attorney of record the total sum of $4,400,000.

4        The petitions also satisfy the requirements of Local Rule 202(c).   Specifically, the

5   petitions describe the terms of their representation; provide that counsel did not become

6   concerned with this matter at the instance of any party against whom the claim of said minor is

7   asserted; that they are not employed by any other party or any insurance carrier involved in the

8   matter; have not received any compensation for their services in connection herewith from any

9   person.  (Catano Am. Pet. at 12-13; Casillas Am. Pet. at 11-12.)

10       The Court now turns to determine whether the amount of the net settlement to the minors

11  is fair and reasonable.

12       **B.     The Amount of Settlement**

13       For the reasons explained below, the Court finds the "net amount distributed to each

14  minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the

15  minor's specific claim, and recovery in similar cases." Robidoux, 638 F.3d at 1181-82.

16       The parties have agreed to settle this matter for $4,400,000.00, which includes the claims

17  of the five minor Plaintiffs and Plaintiff Cheryl Casillas, as well as the payment of attorneys'

18  fees.  (Catano Am. Pet. at 2; Casillas Am. Pet. at 2.)   After waiving costs of $21,640.31 and

19  reducing the total recovery of attorneys' fees so that the fees equate to exactly 45% of the total

20  recovery, Plaintiffs' counsel seeks attorneys' fees in the total amount of $1,980,000.00.  (Id. at 2-

21  3.)  Before deduction of attorneys' fees, each minor's portion of the settlement is $819,000.00

22  and Plaintiff Cheryl Casillas portion is $305,000.00.  (Id. at 2.)   After deducting $1,980,000.00

23  for attorneys' fees (45% of the total settlement), the remainder of the settlement ($2,420,000.00)

24  shall be distributed with each minor receiving $450,450.00 and Plaintiff Cheryl Casillas

25  receiving $167,750.00.  (Id. at 2-3.)[4]

26  ─────────────────────
    [4] As originally submitted, Plaintiffs' attorneys were first to receive attorney' fees in the amount of $480,527.00
27  awarded by the district court, and costs of $21,600.31 (including appellate costs), with this total amount requested
    reduced to 500,000.00.  (ECF Nos. 167 at 2-3, 168 at 2-3.)   In addition, counsel was to receive 40% of the net
28  settlement fund deducted from each plaintiff's share of the fund, reduced from the fee agreement amount of 45%.
    (Id.)  This equated to attorneys' fees in the amount of 46.8% of the total settlement.  After deducting attorneys' fees,

1          1.      <u>Manner of Disbursement to the Catano Minors</u>

2          Petitioner Catano requests approval that each individual settlement amount of $450,450

3   be used to fund a structured settlement annuity for each of the minor Plaintiffs A.C. 1, S.C., A.C.

4   2, and C.C.  (Catano Am. Pet at 10.)  The annuities will be disbursed to A.C. 1, S.C., and A.C. 2,

5   tax-free at six (6) intervals between the age of 18 and 33; and disbursed to C.C., tax-free at eight

6   (8) intervals between the age of 18 and 39.  (<u>Id.</u>; Decl. Dale K. Galipo Supp. Catano Am. Pet.

7   ("Galipo-Catano Decl.") ¶ 10, ECF No. 170-1; Structured Settlement Annuities, Galipo-Catano

8   Decl., Exs. A-D, ECF Nos. 170-2, 170-3, 170-4, 170-5.)

9          The structured settlement annuity also provides for a monthly payment of $350 each for

10  A.C. 1, S.C., and A.C. 2, as well as a monthly payment of $500 for C.C., until each minor

11  reaches the age of eighteen (18), to be made to parent and Petitioner Catano.  (Catano Am. Pet at

12  10; Galipo-Catano Decl. ¶ 10.)  Petitioner Catano is in agreement that these monthly payments

13  are to be used specifically and exclusively on the minors' necessities of life, including food,

14  clothing, shelter, medical and educational expenses.  (Catano Am. Pet at 10.)  Catano is

15  unemployed, receives government assistance such as welfare and food stamps, and has very

16  limited financial means.  (<u>Id.</u>)  Thus, Catano proffers it has been very difficult to financially

17  support and sustain her four (4) boys, especially after the death of their father, who would

18  regularly contribute significant amounts of money to support his children.  (<u>Id.</u>)  C.C. has a

19  mental developmental disability and it costs significantly more to care for him then her other

20  three (3) boys due to the costs of the numerous doctor appointments, treatment and medications

21  C.C. requires.  (<u>Id.</u>)  Therefore, Catano requests $500 monthly, instead of $350 for C.C.  (<u>Id.</u>)

22

23  each minor was to receive  $431,400.00, and Plaintiff Cheryl Casillas was to receive $183,000.  Following
    supplemental briefing and the voicing of the Court's warning that it would be unlikely to approve attorneys' fees
24  above the 45% agreed to in the retainer agreement, counsel has now reduced such fees to a total of 45%.  Thus, each
    minor's share they are to receive has now increased by $19,050.00 between the original and amended petitions,
25  given the reduction in attorneys' fees.

26  The Court notes that while each minor's ultimate portion of the settlement has been increased, it appears Plaintiff
    Casillas' portion of the settlement actually went down from $183,000.00 to $167,750.00 between the original and
27  amended petitions.  This appears to be due to the way the original petition first deducted statutory attorneys' fees
    before apportioning $305,000.00 to Casillas, then deducting 40% for the remainder of the attorneys' fees.  (See ECF
28  Nos. 167 at 2-3, 168 at 2-3.)  In the amended petitions, Casillas' portion remains at $305,000.00, and then is reduced
    by the total attorneys' fee deduction in the amount of 45%.  (Casillas Am. Pet. at 2-3; Catano Am. Pet. at 2-3.)

9

1  Catano, as guardian ad litem for the four minors, does not have claims against Defendants in

2  connection with the subject incident.  (Catano Am. Pet. 11; Galipo Decl. ¶ 14.)

3       Excepting the monthly payments to be made to Catano for the care of the children, the

4  structured settlement annuities separately provide: A.C. 1, age 9, guaranteed tax free

5  disbursements totaling $630,150; S.C., age 14, guaranteed tax free disbursements totaling

6  $562,902; A.C. 2, age 15, guaranteed tax free disbursements totaling $548,585; and C.C., age 16,

7  guaranteed tax free disbursements totaling $627,657.  (Catano Am. Pet. at 10-11; Galipo-Catano

8  Decl. ¶ 10, Exs. A-D.)

9       2.    Manner of Disbursement to A.C. 3

10      Petitioner Casillas requests approval for the $450,450 net settlement amount to minor

11  Plaintiff A.C. 3 to be used to fund a structured settlement annuity that will be disbursed to her

12  tax-free at six intervals between the age of 18 and 33.  (Casillas Am. Pet. at 10; Decl. Dale K.

13  Galipo Supp. Casillas Am. Pet. ("Galipo-Casillas Decl.") ¶ 10, ECF No. 171-1; Structured

14  Settlement Annuity, Galipo-Casillas Decl., Ex. A, ECF Nos. 171-2.)  The structured settlement

15  annuity also provides for a monthly payment of $350 to be made to parent and Petitioner Casillas

16  until A.C. 3 turns eighteen.  (Casillas Am. Pet. at 10.)  Petitioner Casillas agrees that this

17  monthly payment of $350 is to be used specifically and exclusively on minor A.C. 3 for her

18  necessities of life, including food, clothing, shelter, and educational expenses.  (Id.)  Excepting

19  the $350 monthly payments made to Casillas for the care of A.C. 3, the structured settlement

20  annuity separately provides A.C. 3, aged 8, guaranteed tax free disbursements totaling $663,192.

21  (Id.; Galipo-Casillas Decl. ¶ 10, Ex. A.)

22      3.    The Facts of the Case Proffered by Petitioners as Demonstrating Risk

23      The petitions describe the risk that Plaintiffs and counsel faced entering trial, and that

24  continued into the appeal to the Ninth Circuit.  The Court utilizes these facts here in determining

25  the overall fairness of the amount of settlement as related to the specific claims, as well as when

26  considering the amount of attorneys' fees that are deducted from the total settlement amount.

27      The petitions proffer that on September 7, 2015, Decedent was at his home when the

28  Defendant officer deprived Decedent, the minor children, and the Decedent's wife Casillas, of

their state and Constitutional rights when Defendant Shipman fatally shot the Decedent. (Catano Am. Pet. at 6-7; Casillas Am. Pet. at 6.)  The minor Plaintiffs and Plaintiff Casillas brought various wrongful death claims in their individual capacities under state and federal law, and survival claims as the lawful successors in interest to the Decedent under state and federal law. (Id.)  The petitions proffer that the minors have suffered injuries as a result of the loss of their father; that they are deprived of and will continue to suffer a deprivation of their familial relationship with their father; and that medical treatment nor medical billing is relevant to the settlement or damages. (Catano Am. Pet. at 7; Casillas Am. Pet. at 7.)  The petitions identify that following the five day jury trial and two days of deliberations, the jury returned a verdict finding that Defendant Shipman violated the Decedent's Fourth Amendment rights by using unreasonable force, and that Defendant Shipman was liable for the state law wrongful death claims of battery and negligence. (Catano Am. Pet. at 5; Casillas Am. Pet. at 5.)

The petitions describe at length the risks that Plaintiffs and Plaintiffs' counsel faced at trial given the circumstances of the fatal shooting, and the background of the Decedent. (Catano Am. Pet. at 8; Casillas Am. Pet. at 8.)  Specifically, the incident involved allegations that: Decedent had led police on a high speed vehicle pursuit while drunk and high on methamphetamines, which was categorized as felony evading; Decedent allegedly almost struck a police cruiser during the pursuit and fled on foot into a residence that was occupied, including with women and children; and Decedent then barricaded himself inside of the residence refusing to come out despite warnings by the police that he was surrounded and that a K-9 would be released into the home and would bite him.  (Id.)  Further, there were no witnesses to the actual shooting other than Officer Shipman who alleged that Decedent was armed with a large metal pipe, that Decedent refused Shipman's commands to stop and get down on the ground and that Decedent was approaching Shipman armed with the metal pipe and was about to strike Shipman in the head with the pipe right before Shipman fatally shot Decedent. (Id.)  Numerous officers also testified that they observed Decedent armed with the large metal pipe and that he refused to drop the pipe despite being ordered to do so by multiple officers.  (Catano Am. Pet. at 8-9; Casillas Am. Pet. at 8.)  Additionally, Decedent was shot three (3) times, and two (2) of those

shots were to the front of Decedent's body, which is consistent with Decedent facing in Shipman's direction at the time of the shooting.  (Catano Am. Pet. at 9; Casillas Am. Pet. at 8-9.) Toxicology results found significant amounts of methamphetamine in Decedent's system and alcohol at the time of autopsy.  (Catano Am. Pet. at 9; Casillas Am. Pet. at 9.)

Petitioners also submit there was evidence that Decedent spent multiple years incarcerated for numerous driving under the influence convictions; that he suffered from drug and alcohol issues; that he physically abused the mother of his four (4) boys, including punching her in the face; and  that Decedent was a dead-beat dad that did not spend time and money on his kids, as well as allegations of infidelity.  (Id.)  There was also evidence that Decedent suffered from depression and had previously expressed thoughts and feelings of suicide.   (Id.) Defendants' police practices expert opined that the officer's use of deadly force was reasonable, not excessive, was in self-defense or defense of others, and that the officer acted consistent with police training and POST standards.  (Id.)  Defendants never offered more than $50,000 to settle the case prior to commencement of trial.  (Id.)

Finally, even after prevailing at trial, there was significant and concerning issues raised on appeal by the Defendants, including issues of qualified immunity, juror misconduct, improper jury instructions, an inconsistent verdict and improper types and amount of the damages awarded.  (Id.)

4.   Outcomes in Other Similar Case

While the Court requested petitioners to provide sufficient case law demonstrating the reasonableness of this settlement as compared to similar cases.  In supplemental briefing, petitioners proffer that most cases involving minors that are settled after trial, and only provide the Court with one example, a case where counsel represented another minor of a decedent father, DeLeon v. City of Los Angeles, Case No. 2:16-cv-04626-PSG-SK (C.D. Cal.).  (ECF No. 169 at 6.)  In that case, the jury awarded a verdict of $4,500,000, where aside from the minor, the only other plaintiff was the father of the decedent.  (Id. at 6-7.)  After trial, the parties settled the case and the minor's portion of the settlement was $2,400,000.  (Id. at 7.)  Following the deduction of attorneys' fees, the minor received a net settlement of $1,413,380.66.  (ECF No.

169-2 at 3.)

Based on the similar case proffered by petitioners, as well as the Court's own research, the Court finds the net amount to be distributed is fair and reasonable in consideration of the facts of the case, the specific claims, and recovery in similar cases.  See Cotton ex rel. McClure v. City of Eureka, Cal., No. C 08-4386 SBA, 2012 WL 6052519, at *1 (N.D. Cal. Dec. 5, 2012) (following jury verdict in amount of $4,575,000.00 in wrongful death action against city and police officers, approving settlement during pendency of appeal in total amount of $4,500,000.00, with minor child's portion of $4,000,000.00, reduced to net of $2,646,765.90 for minor after deduction of attorneys' fees); Garlick v. Cty. of Kern, No. 113CV01051LJOJLT, 2016 WL 4087057, at *2–3 (E.D. Cal. Aug. 2, 2016) (approving settlement in total amount of $180,000.00 for minor child in wrongful death and excessive force action against county and police officers, reduced to net amount of $132,000.00 after attorneys' fees), report and recommendation adopted, No. 113CV01051LJOJLT, 2016 WL 4445852 (E.D. Cal. Aug. 22, 2016); Armstrong v. Dossey, No. 1:11-CV-01632-SKO, 2013 WL 4676541, at *1, 3 (E.D. Cal. Aug. 30, 2013) (approving settlement of minors' claims for $22,500 and $11,000 respectively, in action involving their father's death and claims of excessive force against officers); Doe ex rel. Scott v. Gill, No. C 11-4759 CW, 2012 WL 1939612, at *1 (N.D. Cal. May 29, 2012) (approving a minor's compromise in the net amount of $7,188.85 where minor's mother was shot and killed by police officers when decedent was under the influence and attempting to hit officer with stolen vehicle); Swayzer v. City of San Jose, No. C10-03119 HRL, 2011 WL 3471217, at *1 (N.D. Cal. Aug. 5, 2011) (in action with alleged wrongful death during arrest, approving minor child's settlement in net amount of $2,054.17); E.S. by & through Gonzalez v. City of Visalia, No. 1:13-CV-1697-LJO-BAM, 2015 WL 6956837, at *1 (E.D. Cal. Nov. 3, 2015) (in action involving fatal shooting by police, approving minor's settlement in total amount of $225,000.00, and net amount of $130,444.83 following deduction of attorneys' fees), report and recommendation adopted, No. 113CV01697LJOBAM, 2015 WL 13215675 (E.D. Cal. Nov. 20, 2015); Est. of Alderman v. City of Bakersfield, No. 116CV00994DADJLT, 2019 WL 827623, at *1 (E.D. Cal. Feb. 21, 2019) (in action involving fatal shooting of father, approving settlement in

1  net amount of $22,862.07 to each of two minor plaintiffs).

2  The Court finds these facts demonstrate the legitimate and fair compromise of a dispute,

3  and while the undersigned did not conduct the settlement conference, the fact that the jury

4  returned a similar verdict.   Additionally, all Defendants have signified they hold no opposition

5  to the granting of Plaintiffs' motion and no opposition to approving the proposed settlement

6  agreement.  (ECF Nos. 62, 63.)

7      5.   Attorneys' Fees

8  Attorneys' fees in the amount of twenty-five percent (25%) are the typical benchmark in

9  contingency cases for minors.  McCue v. S. Fork Union Sch. Dist., No. 1:10-CV-00233-LJO,

10  2012 WL 2995666, at *2 (E.D. Cal. July 23, 2012) ("It has been the practice in the Eastern

11  District of California to consider 25% of the recovery as the benchmark for attorney fees in

12  contingency cases for minors, subject to a showing of good cause to exceed that rate.").  Given

13  the holding in Robidoux, it may be error for this court to reject the settlement simply because the

14  Court finds that the attorney fees sought are excessive.  Velez v. Bakken, No. 2:17-CV-960 WBS

15  KJN, 2019 WL 358703, at *2 n.4 (E.D. Cal. Jan. 29, 2019) (noting holding of Robidoux makes

16  reduction of fees simply for finding them to be excessive error, and additionally finding that

17  attorneys' fees amounting to 46% of the settlement, though higher than benchmark, was "not

18  excessive because of counsel's experience with similar cases, the amount of time counsel spent

19  investigating the claims, and the risk counsel took in pursuing this action on a contingency

20  basis.").

21  Counsel for Plaintiffs accepted this engagement for a contingency fee, plus

22  reimbursement for any costs advanced.  (Catano Am. Pet. at 13; Casillas Am. Pet. at 12.)  The

23  retainer agreement provides for a fort-five percent (45%) attorney contingency fee recovery.

24  (Id.)  Pursuant to the fee splitting agreement, the Law Offices of Dale K. Galipo will receive

25  60% of the contingency fee and William L. Schmidt, Attorney at Law, P.C will receive 40% of

26  the contingency fee.  (Id.)  As originally submitted, Plaintiffs' counsel sought $2,060,000.00 in

27  fees, which is 46.8% of the gross settlement amount.  Nonetheless, in requesting supplemental

28  briefing, the Court expressed concern that the fees exceeded the 45% agreed to in the fee

agreement, and the Court ordered Plaintiffs to set forth case law supporting any argument that the statutory attorney fees should not be considered in determining the percentage of the fee award.  (ECF No. 168 at 3.)  The Court also stated it would be unlikely to find that allowing the fees to exceed the fee agreement percentage, would be fair to the minor Plaintiffs.  (ECF No. 168 at 4.)  In response to the Court's admonition, Plaintiffs' counsel submits they are agreeable to waive their litigation costs and reduce the amount sought from $2,060,000 to $1,980,000, so that counsel will receive exactly 45% of the gross settlement amount, pursuant to the fee agreement.  (Suppl. Br. at 7, ECF No. 169 at 7.)

Following counsels' reduction of the total fees sought to a percentage equaling the 45% agreed to in the retainer agreement, and in consideration of the course of litigation, the risks faced by counsel in bringing this case through trial and briefing on appeal, counsel's experience in this area of law, and the substantial amount of recovery obtained for the minors, the Court does not find the attorneys' fees excessive.  See Velez, 2019 WL 358703, at *2; Robidoux, 638 F.3d at 1181.

**C.     The Court Finds the Settlement to be Fair and Reasonable**

Based on the recovery in the similar cases cited above, the facts of this case, and the minors' specific claims, the Court finds the net amount of $450,450.00 to be distributed to each minor to be fair and reasonable, and shall recommend granting the petitions for compromise of the minors' claims.

**V.**

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.     The petition for compromise of the claims of A.C., S.C., A.C., and C.C., as amended (ECF Nos. 166, 170), be GRANTED;

2.     The petition for compromise of the claims of A.C., as amended (ECF Nos. 167, 171), be GRANTED; and

3.     The proposed settlement be APPROVED as fair and reasonable.

This findings and recommendations is submitted to the district judge assigned to this

action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 19, 2021**

UNITED STATES MAGISTRATE JUDGE